**Charlotte and Howard HAWK, etc.**
**v.**
**Harvey FENNER, etc., et al.**
**Civ. No. 74-5041.**

United States District Court,
D. South Dakota.
May 30, 1975.

Michael A. Wolff, Rapid City, S. D., for plaintiffs.

Lawrence R. Bihlmeyer, Deputy State's Atty., Rapid City, S. D., William J. Janklow, Atty. Gen., Pierre, S. D., for defendants.

## MEMORANDUM OPINION

BOGUE, District Judge.

Plaintiffs move this Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, granting plaintiffs the relief sought in their complaint. Plaintiffs seek declaratory and injunctive relief to prevent the defendants from enforcing the durational

residency requirements of S.D.C.L. § 28–13–3 (1967), which specify one year residence in the state and ninety days residence in the county before an individual may qualify for a county's poor relief program. Plaintiffs also seek to have this Court declare S.D.C.L. § 28–13–3 (1967) unconstitutional because application and enforcement of the statute's durational residency requirements denies them equal protection of the law as guaranteed by the Fourteenth Amendment and infringes upon their constitutionally protected right to travel.

■ Ordinarily, an action seeking to enjoin the operation of a state statute on constitutional grounds must be heard and decided by a three-judge district court. 28 U.S.C. § 2281 *et seq.* This case, however, falls within the clearly recognized exception to the statutory requirement set forth in *Bailey v. Patterson,* 369 U.S. 31, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962), and subsequent cases that where the unconstitutionality of a statute is quite clear, a three-judge court is not needed and a single judge has authority to grant the relief requested. Wright, *Law of Federal Courts,* 2d. Ed. p. 192. The plaintiff's cause of action arises under 42 U.S.C. § 1983 and this Court has jurisdiction under 28 U.S.C. § 1343. This Court has the power to grant the relief requested under 28 U. S.C. §§ 2201 and 2202, and Rule 57 of the Federal Rules of Civil Procedure. This Court finds for the following reasons that no material issue of fact is presented and therefore plaintiffs are entitled to summary judgment as a matter of law.

By their answer to plaintiff's complaint, defendants admit: (1) that plaintiffs have been residents of the Cheyenne-Eagle Butte Reservation in South Dakota since their birth and of Pennington County since July 21, 1974; (2) plaintiffs have been denied assistance under the Pennington County Poor Relief program administered by the defendants pursuant to S.D.C.L. § 28–13–3 (1967); and (3) defendants' refusal to provide County Poor Relief to the plaintiffs was based on the fact that they had not been residents of Pennington County for the requisite ninety day period. See defendants' Amended Answer wherein paragraphs I, II, V, VI, VIII and IX of plaintiffs' complaint are admitted.

■ S.D.C.L. § 28–13–3 (1967) provides:

Every male person and every unmarried female over the age of twenty-one years, who shall have resided in this state for one year and in the county ninety days, shall thereby gain a legal settlement in such county.

A legal settlement in a county is a condition precedent to receiving county poor relief. Plaintiffs here simply seek the removal of the durational residency requirement of S.D.C.L. § 28–13–3 (1967). Plaintiffs do not challenge South Dakota's power to restrict welfare assistance to indigents who are bona fide residents of the state and county when they attempt to register. Thus, the question of the rights of transients to welfare benefits is not presented in this case. South Dakota insists, however, that in addition to being a bona fide resident and an indigent, an applicant must have been a resident of the state for one year and a resident of the county for ninety days. Thus, the single question presented is whether South Dakota, through the state and county durational residency requirement of S.D.C.L. § 28–13–3 (1967), may constitutionally deny welfare assistance to indigents who do not meet the fixed statutory residency requirements but who otherwise are qualified applicants.

In determining whether the challenged durational residency requirement violates the Equal Protection clause of the Fourteenth Amendment, this Court must first determine what burden of justification the classification created thereby must meet by determining the nature of the classification and the individual interests affected. *Dunn v. Blumstein,* 405 U.S. 330, 335, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972). Fortunately, the

**4**

opinion of the Supreme Court of the United States in the case of *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), makes the otherwise difficult issue of law presented by this case quite clear. In *Shapiro*, the Supreme Court held that a statutory one-year residency requirement established by several states as a prerequisite to the granting of welfare assistance violated the equal protection clause of the Fourteenth Amendment and the constitutionally protected right to travel. The *Shapiro* Court observed that fixed durational residency requirements create two classes of needy residents, "indistinguishable from each other except that one is composed of residents who have resided a year or more, and the second of residents who have resided less than a year, in the jurisdiction. On the basis of this sole difference the first class [was] granted and the second class [was] denied welfare aid upon which may depend the ability . . . to obtain the very means to subsist—food, shelter, and other necessities of life." 394 U.S., at 627, 89 S.Ct., at 1327. The *Shapiro* Court found that because this suspect classification impinged upon the constitutionally guaranteed right of interstate travel, it was to be judged by the standard of whether it promoted a compelling state interest. 394 U.S. at 634, 89 S.Ct. at 1331. See also the concurring opinion of Mr. Justice Stewart, 394 U.S. at 642–644, 89 S.Ct. at 1335–1337. Finding such a compelling interest wanting under the strict scrutiny standard of review, the Court held the challenged residency requirements unconstitutional.

■■ The defendants argue that the residency requirement in this case is distinguishable from those in *Shapiro*, and therefore the "reasonable relationship" test set out in *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), should be applied, while the plaintiffs urge that *Shapiro* is controlling. This Court agrees that South Dakota's durational residency requirement for County Poor Relief must be justified by the compelling state interest test. This Court finds that compelling interests are lacking, thus, the requirements contained in S.D.C.L. § 28–13–3 (1967) create a classification which constitutes an invidious discrimination, denies plaintiffs equal protection of the laws, and penalizes their constitutionally protected right to travel.

■ The defendants argue that the instant county residence requirement is distinguishable from the state residence requirement in *Shapiro*, in that the former penalizes not interstate but rather intrastate travel. There can no longer be any question but that the right to travel is embodied in the Fourteenth Amendment and applies to the states. *Edwards v. California*, 314 U.S. 160, 177, 62 S.Ct. 164, 169, 86 L.Ed. 119 (1941) (Douglas, J., concurring); *Dunn v. Blumstein*, supra; *Shapiro v. Thompson, supra*. The nucleus of this principle was first stated by Chief Justice Taney in the *Passenger Cases*, 7 How. 283, 492, 12 L.Ed. 702 (1849):

> For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States.

The constitutional right to travel includes not only interstate but intrastate travel as well. *King v. New Rochelle Housing Authority*, 442 F.2d 646, 647 (2d Cir. 1971); *Cole v. Housing Authority of City of Newport*, 435 F.2d 807, 809 (1st Cir. 1970).

■ The defendants further argue that the challenged statute did not deter the plaintiffs from exercising their right to travel. The Court in *Dunn* labeled such an approach a "fundamental misunderstanding of the law," and stated:

> *Shapiro* did not rest upon a finding that denial of welfare actually de-

terred travel. Nor have other "right to travel" cases in this Court always relied on the presence of actual deterrence. In Shapiro we explicitly stated that the compelling state interest test would be triggered by "any classification which serves to penalize the . . . right [to travel]." 405 U.S. at 339–340, 92 S.Ct. at 1002.

Thus, *Shapiro* and *Dunn* stand for the principle that a classification which operates to penalize those persons who have exercised their constitutional right of travel or migration must be justified by a compelling state interest. *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076, 1083, 39 L.Ed. 2d 306 (1974). The test is not actual deterrence but rather the presence of a penalty placed on the exercise of a fundamental constitutional right. The *Shapiro* Court defined the nature of the penalty or risk imposed by a fixed residency requirement that touches the right to travel or migrate and triggers the strict scrutiny of the compelling state interest test:

> We do not doubt that the one-year waiting period device is well suited to discourage the influx of poor families in need of assistance. An indigent who desires to migrate, resettle, find a new job, and start a new life will doubtless hesitate if he knows that he must risk making the move without the possibility of falling back on state welfare assistance during his first year of residence, when his need may be most acute. But the purpose of inhibiting migration by needy persons into the State is constitutionally impermissible. 394 U.S. at 629, 89 S.Ct. at 1328–1329.

In *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 94 S.Ct. 1076 (1974), the United States Supreme Court, following *Shapiro,* struck down a fixed durational residency requirement for county medical assistance. The Court found that although the indigent plaintiff had not been actually deterred from travel, his exercise of that right had been pe-

nalized after the fact, and this was sufficient to place upon the state the burden of showing a compelling interest to justify treating those indigent persons who had recently exercised their constitutional right to travel or migrate differently than indigent applicants who had not recently moved to the jurisdiction. Although *Shapiro* involved a federally funded welfare program, the *Maricopa County* case and the instant case both involved county programs.

■ The defendants also assert that S.D.C.L. § 28–13–3 (1967) and its fixed durational residency requirements are justified because the statute operates to protect and organize the budget. Again, the United States Supreme Court has previously decided this issue and has specifically answered this argument.

In *Shapiro* the Court stated:

> We recognize that a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assistance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens. It could not, for example, reduce expenditures for education by barring indigent children from its schools. Similarly, in the cases before us, appellants must do more than show that denying welfare benefits to new residents saves money. The saving of welfare costs cannot justify an otherwise invidious classification. 394 U.S. at 633, 89 S.Ct. at 1330.

This Court agrees that South Dakota should be concerned with its budget and may legitimately attempt to limit its expenditures. South Dakota may not, however, accomplish this purpose by creating invidious distinctions between classes of its citizens which operate to deny equal protection of the laws to new residents of a county or of the state and thereby penalize an indigent citizen's constitutionally protected right "to migrate, resettle, find a new job, and start

a new life." 394 U.S. at 629, 89 S.Ct. at 1328.

Although defendants have not asserted a legitimate justification for imposing upon applicants the fixed durational residency requirements contained in S.D.C.L. § 28–13–3 (1967), they have asserted a legitimate justification for imposing upon applicants some waiting period or residency requirements. The defendants claim that the welfare authorities need some reasonable period of time to investigate the facts stated in the application in order to prevent fraud. This Court agrees. In the judgment of this Court, the State of South Dakota may constitutionally impose upon applicants a reasonable waiting period or residency requirement based upon the following compelling state interests: (1) a legitimate need to establish bona fide good faith residence of the applicant in the state and in the county, (2) a valid interest in preventing fraud by the applicant, whether a newcomer or a long time resident, and (3) an effective safeguard against the hazard of double payments by two jurisdictions. Such a reasonable waiting period, with duration dictated only by the nature of the case and the difficulty of investigation and of necessity different for each case, does not violate the Equal Protection clause, and the resulting classification as justified by the state's compelling interest is not a penalty on the applicant's right to travel or migrate. As the *Shapiro* Court pointed out, "the residence requirement and the one-year waiting-period requirement are distinct and independent prerequisites," and only the latter was held unconstitutional. 394 U.S. at 636, 89 S.Ct. at 1332. In *Memorial Hospital v. Maricopa County, supra,* the Court further explained:

Later, in invalidating a durational residency requirement for voter registration on the basis of *Shapiro,* we cautioned that our decision was not intended to "cast doubt on the validity of appropriately defined and uniformly applied bona fide residence require-

ments." 415 U.S. 250, 94 S.Ct. at 1081, citing *Dunn v. Blumstein,* 405 U.S. 330, 342, n. 13, 92 S.Ct. 995, 1003 (1972).

Stating the principle another way, the *Memorial Hospital* Court stated:

Although any durational residency requirement imposes a potential cost on migration, the Court, in *Shapiro,* cautioned that some "waiting-periods . . . may not be penalties." 415 U.S. 250, 94 S.Ct. at 108, citing 394 U.S. at 638, n. 21, 89 S.Ct. at 1333.

It is quite clear that a state may constitutionally impose some waiting period based upon its legitimate need to ascertain which applicants are and which applicants are not bona fide residents in good faith. The precise question presented in this case, stated another way, is whether S.D.C.L. § 28–13–3 (1967), and the restrictions contained therein, have been tailored and drawn with precision so as to be no more restrictive than necessary. *N. A. A. C. P. v. Button,* 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed.2d 405 (1963). S.D.C.L. § 28–13–3 (1967) creates a conclusive presumption that a person is not a bona fide resident in good faith of the state for one year and of a county for ninety days. In opinion of this Court this conclusive presumption is not tailored to provide the least burdensome means of promoting the interests deemed to be compelling. On this point the *Shapiro* Court stated:

Similarly, there is no need for a State to use the one-year waiting period as a safeguard against fraudulent receipt of benefits; for less drastic means are available, and are employed, to minimize that hazard. . . . cooperation among state welfare departments is common. The District of Columbia, for example, provides interim assistance to its former residents who have moved to a State which has a waiting period. As a matter of course, District officials send a letter to the welfare authorities in the recipient's new community "to request the

information needed to continue assistance." A like procedure would be an effective safeguard against the hazard of double payments. Since double payments can be prevented by a letter or a telephone call, it is unreasonable to accomplish this objective by the blunderbus method of denying assistance to all indigent newcomers for an entire year. 394 U.S. at 637, 89 S.Ct. at 1333.

Similarly the Court in *Memorial Hospital* stated:

The appellees also argue that the challenged statute serves some administrative objectives. They claim that the one-year waiting period is a convenient rule of thumb to determine bona fide residence. Besides not being factually defensible, this test is certainly overbroad to accomplish its avowed purpose. A mere residence requirement would accomplish the objective of limiting the use of public medical facilities to bona fide residents of the County without sweeping within its prohibitions those bona fide residents who had moved into the State within the qualifying period. Less drastic means, which do not impinge on the right of interstate travel, are available and employed to ascertain an individual's true intentions, without exacting a protracted waiting period which may have dire economic and health consequences for certain citizens. 415 U.S. 250, 94 S.Ct. at 1086–1087, citing *Shelton v. Tucker,* 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960).

It is important to note that since August 20, 1974, when this Court entered its order granting a preliminary injunction enjoining the defendants from applying or enforcing the fixed durational residency requirements of S.D.C.L. § 28–13–3 (1967), the state and county systems have continued to operate without the benefit of the statute's requirements.

In reality, S.D.C.L. § 28–13–3 (1967) simply seeks to determine "residency" or more technically correct, "domicile", by establishing a conclusive non-rebuttable presumption that applicants who have not lived in the state for one year or in the county for ninety days do not have the present intent to fix their abode in the county and make it their permanent home. The United States Supreme Court in both *Shapiro* and *Memorial Hospital,* has held that such a presumption is not valid to determine the applicant's intent because the fact presumed does not necessarily follow from the established requirements of residence for one year in the state and ninety days in the county. Conversely, the lack of one year residency in the state and ninety days in the county does not prove that the applicant lacks the present intent to fix his abode and make his permanent home in the state and county where he applies for benefits. The resulting classification of otherwise equal indigent citizens and the resulting dissimilarity in treatment afforded the two classes of indigents, based upon such an irrational distinction, is prohibited by the Equal Protection clause of the Fourteenth Amendment. In addition, applicants moving from jurisdiction to jurisdiction are exercising a fundamental constitutional right and therefore such classification in penalizing that right is unconstitutional in the absence of a compelling state interest.

Based upon the above authorities and analysis, this Court holds that the standards for determining intent set out in S.D.C.L. § 28–13–3 (1967) are not rationally related to the determination of that ultimate fact, are not tailored with sufficient particularity to provide the least burdensome means of promoting its compelling state interests, and therefore the resulting classification does not promote the state interests that have been deemed compelling. This Court hereby declares S.D.C.L. § 28–13–3

(1967) unconstitutional as violative of the Equal Protection clause of the Fourteenth Amendment and the constitutionally protected fundamental right to travel, insofar as it contains a fixed durational residency requirement of one year in the state and ninety days in the county as a prerequisite to the granting of county poor relief.

The State of South Dakota may, however, constitutionally impose upon applicants a reasonable waiting period or residency requirement based upon its interests that have been deemed compelling. Before granting an application, the welfare authorities may legitimately take the time necessary to investigate the applicant's employment history, housing, and family situation and in the course of the inquiry necessarily learn the facts upon which to determine whether the applicant is a bona fide resident in good faith. Example of factors that may be investigated and considered in determining good faith residence are many: length of residence; establishment of local bank accounts; change of driver's license or auto license; auto registration; presence of children; enrollment of children in local schools; ownership of home or property; local employment; residence in another jurisdiction; enrollment and receipt of welfare benefits from another jurisdiction whether county, state, federal or tribal; and voter registration, to name a few. If the investigation reveals that the applicant has retained the indicia of residence or domicile in another jurisdiction, or reveals that the applicant is attempting to cover the cost of a weekend fling in the jurisdiction, or otherwise to promote a fraud on the taxpayers, of course welfare benefits should be denied. If, on the other hand, the investigation shows that the applicant is an indigent and a bona fide resident of the jurisdiction in good faith and otherwise qualified benefits should be granted. The reasonableness of the period of time taken to complete the investigation of each application must be determined on a case by case basis and can only be justified by a diligent, continuous, ongoing and good faith effort by welfare authorities to complete the investigation. Unreasonable delay in pursuing the inquiry and arriving at a decision cannot be justified or tolerated because protected constitutional rights of the applicant are at stake.

This Court therefore holds that the State of South Dakota may constitutionally impose upon applicants for County Poor Relief a reasonable waiting period or residency requirement in order to conduct investigations based upon its compelling state interests of: (1) a legitimate need to establish bona fide good faith residence of the applicant in the state and in the county, (2) a valid interest in preventing fraud by the applicant, whether a newcomer or a long time resident, and (3) an effective safeguard against the hazard of double payments by two jurisdictions.

This Court means no intrusion upon those areas traditionally reserved to the states. The ruling of this Court is limited exclusively to the question of whether the residency requirements contained in S.D.C.L. § 28–13–3 (1967) of one year in the state and ninety days in the county as a prerequisite to County Poor Relief, conforms with constitutional dictates. This Court has found that they do not.

This Court finds that there exists no material issues of fact and that plaintiffs are entitled to judgment as a matter of law under Rule 56 of the Federal Rules of Civil Procedure. The plaintiffs' motion for summary judgment is therefore granted.