Vanessa and Kevin JONES, Plaintiffs-Respondents,†

Alex GARDNER, Plaintiff-Intervenor,

v.

MILWAUKEE COUNTY and Milwaukee County Department of Social Services, Defendants-Appellants.

Supreme Court

*No. 91–0817. Oral argument March 24, 1992.—Decided June 17, 1992.*

(Also reported in 485 N.W.2d 21.)

†Motion for reconsideration denied, August 11, 1992.

For the defendants-appellants the cause was argued by *Robert G. Ott,* Milwaukee County Corporation Counsel with whom on the brief (in the Court of Appeals) was *James T. McClutchy,* Deputy Corporation Counsel.

For the plaintiffs-respondents there was a brief (in the Court of Appeals) by *Patricia DeLessio, Anne L. DeLeo* and *Legal Action of Wisconsin,* Milwaukee and oral argument by *Ms. DeLessio.*

Amicus curiae brief (in the Court of Appeals) was filed by *David Prosser, Jr.* and *Christopher L. Wolle,* Madison for Representative David Prosser, Jr.

Amicus curiae brief was submitted by *James H. McDermott,* assistant attorney general, *Donald P. Johns,* assistant attorney general and *James E. Doyle,* attorney general.

DAY, J. This is an appeal on bypass granted pursuant to sec. 809.60, Stats., 1989–90, from a decision by the Circuit Court for Milwaukee County, Patricia D. McMahon, Judge, holding sec. 49.015, Stats., 1985–86, which requires dependent persons to have resided in Wisconsin for at least 60 consecutive days to be eligible for general relief, to be unconstitutional under the equal protection clauses of the United States and Wisconsin Constitutions.

We hold that the 60 day waiting period requirement is constitutional under the equal protection clauses of the United States and Wisconsin Constitutions. We therefore reverse the decision of the circuit court.

This case arises from an action filed by Vanessa and Kevin Jones on December 14, 1988 in the Circuit Court for Milwaukee County seeking injunctive and declaratory relief on behalf of themselves and the class of persons living in Milwaukee County whose applications for general relief benefits have been, were being, or will be denied because they had not resided in Wisconsin for at least 60 consecutive days before applying for general relief under sec. 49.015, Stats.

Plaintiffs argued that the 60 day waiting period violated plaintiffs' right to travel as guaranteed by the United States Constitution, and plaintiffs' right to equal protection of the law as guaranteed by the United States and Wisconsin Constitutions.

The circuit court certified the action as a class action, allowed Alex Gardner to intervene, and granted plaintiffs' motion for a temporary injunction prohibiting

defendants from denying general relief benefits to members of the class solely because they failed to meet the 60 day durational residency requirement. Subsequently, both plaintiffs and defendants moved for summary judgment.

On May 2, 1990, the circuit court granted plaintiffs' motion for summary judgment and held that the challenged statute violated plaintiffs' constitutional right to travel and to equal protection of the law.[1]

The material facts are not in dispute. Defendant Milwaukee County is a municipal corporation in Wisconsin and is required by sec. 49.02(1m), Stats., to maintain a program that provides general relief to all eligible dependent persons within Milwaukee County.

Defendant Milwaukee County Department of Social Services is an administrative agency created pursuant to sec. 46.215(1)(a), Stats. Among its responsibilities is the administration of the general relief program in Milwaukee County.

Section 49.01(2), Stats., defines a dependent person as:

> an individual without the presently available money, income, property or credit, or other means by which it can be presently obtained, excluding the exemptions set forth under s. 49.06, sufficient to provide the necessary commodities and services specified in sub. (5m).

Section 49.01(5m), Stats., defines general relief to mean:

---

[1]Noting that the due process and equal protection clauses of the Wisconsin and United States Constitutions are substantial equivalents, *State v. McManus*, 152 Wis. 2d 113, 130, 447 N.W.2d 654 (1989), the circuit court found that sec. 49.015, Stats., violated both the United States and Wisconsin Constitutions.

such services, commodities or money as are reasonable and necessary under the circumstances to provide food, housing, clothing, fuel, light, water, medicine, medical, dental, and surgical treatment (including hospital care), optometrical services, nursing, transportation, and funeral expenses, and include wages for work relief. The food shall be of a kind and quantity sufficient to provide a nourishing diet. The housing provided shall be adequate to health and decency. Where there are children of school age the general relief furnished shall include necessities for which no other provision is made by law. The general relief furnished, whether by money or otherwise, shall be at such times and in such amounts, as will in the discretion of the general relief official or agency meet the needs of the recipient and protect the public.

The eligibility section at issue, sec. 49.015, Stats., provides:

**(1)** In this section, "close relative" means the person's parent, grandparent, brother, sister, spouse or child.

**(2)** No person is eligible for general relief under this chapter unless the person has resided in this state for at least 60 consecutive days before applying for general relief. This requirement does not apply if the person resides in this state and meets any of the following conditions:

(a) The person was born in this state.

(b) The person has, in the past, resided in this state for at least 365 consecutive days.

(c) The person came to this state to join a close relative who has resided in this state for at least 180 days before the arrival of the person.

(d) The person came to this state to accept a bona fide offer of employment and the person was eligible to accept the employment.

(e) The person came to this state for a lawful purpose without intent to seek benefits under this chapter.

(3) Prior to January 1, 1987, a county or municipality may waive the requirement under sub. (2) in a medical emergency or in case of unusual misfortune or hardship. Each waiver shall be reported to the department. The department may deny reimbursement under s. 49.035 and s. 49.04, 1983 stats., for any case in which a waiver is inappropriately granted.

(4) After December 31, 1986, a general relief agency may waive the requirement under sub. (2) in a medical emergency or in case of unusual misfortune or hardship. Each waiver shall be reported to the department. The department may deny reimbursement under s. 49.035 for any case in which a waiver is inappropriately granted.

During the 1986-87 legislative session, section 49.015(2)(e), Stats., was repealed, thus eliminating the exception for those who "came to this state for a lawful purpose without intent to seek benefits."[2]

Defendants amended their policies to conform with the changes in section 49.015, Stats., and, as a matter of policy and practice, deny general relief benefits to per-

---

[2]During the 1986-87 legislative session, the legislature renumbered and amended sec. 49.015, Stats. Section 49.015(2)(a)-(d) is now sec. 49.015(1)(b)1-4. *See* 1987 Wis. Act. 27, section 949g. Section 49.015(3), Stats., was repealed, *see* 1987 Wis. Act. 27, section 951m, and 49.015(4), Stats., was initially renumbered as 49.015(1)(d), Stats., *see* 1987 Wis. Act. 27, section 952, then subsequently renumbered as 49.015(3), Stats., *see* 1987 Wis. Act. 399, section 149r.

sons that have not resided in Wisconsin for 60 consecutive days prior to application unless they satisfy one of the exceptions.

Milwaukee County routinely verifies all eligibility factors, including residence in Milwaukee County, in determining the eligibility of applicants for general relief. In so doing, Milwaukee County utilizes its limited resources to the best of its ability.

Plaintiffs Vanessa and Kevin Jones are adults who reside in Milwaukee County and were denied general relief benefits because they had not resided in Wisconsin for 60 consecutive days. They arrived in Wisconsin with their three children on November 22, 1988, intending to spend the Thanksgiving holidays with the family of a friend. They applied for general relief on December 6, 1988 because they were without available money, income, property, or credit or any other means to obtain such resources sufficient to provide for basic necessities.

Plaintiff Alex Gardner is an adult resident of Milwaukee County who previously lived with his parents in Waukegan, Illinois, and supported himself with sporadic employment in the building trades industry. When his parents moved to Texas, he moved to Milwaukee. He stayed at the Guest House, a temporary shelter for homeless persons, where he was told he could remain for only 30 days. Having no funds, he applied for general relief on January 17, 1989.

Plaintiffs Vanessa Jones, Kevin Jones, and Alex Gardner were denied general relief benefits solely because they had not resided in Wisconsin for 60 days. In addition to these named plaintiffs, at least 20 persons each month are denied general relief benefits by defendants solely because they fail to satisfy the 60 day residency requirement.

898

The circuit court relied ostensibly on *Shapiro v. Thompson*, 394 U.S. 618 (1969), as the basis for its decision. *Shapiro* held that Connecticut's, Pennsylvania's, and the District of Columbia's public assistance statutes, which imposed one year residency eligibility requirements, were unconstitutional under the equal protection clause.

The Court in *Shapiro* found that the one year waiting period created two classifications of persons; namely, those who had resided in the jurisdiction for one year, and those who had not. *Id.* at 627. The Court stated that the right to travel has long been recognized as fundamental, *id.* at 629–30, and reviewed the statutes under the "strict scrutiny" standard because, it concluded, "any classification which serves to penalize the exercise of that right, unless shown to be necessary to promote a *compelling* governmental interest, is unconstitutional." *Id.* at 634.

The Court discussed the states' and District's purposes in enacting the one year waiting requirement and concluded that, "[t]he interests which appellants assert are promoted by the classification either may not constitutionally be promoted by government or are not compelling governmental interests." *Id.* at 627.

Initially, the Court addressed the "constitutionally impermissible" governmental objectives. First, the Court concluded that it was constitutionally impermissible to deter migration for the purpose of protecting the fiscal integrity of state public assistance programs based on the argument that state programs to assist long time residents will be impaired by an influx of indigent newcomers. *Id.* at 627–32. Second, the Court concluded that the equal protection clause would not permit apportioning state services on the basis of the respective tax contributions of the new and old residents. *Id.* at 632–33.

899

Next, the Court concluded that the administrative reasons given for the one year waiting period requirement were not compelling. First, the Court rejected the argument that the one year requirement facilitates the planning of the welfare budget because the record was "utterly devoid of evidence" that the jurisdictions in fact used the one year requirement as a means to predict the number of people who will require assistance in the budget year.

Second, the Court rejected the argument that the one year waiting period provides an objective test of residency because, noting that "residence" is conventionally defined as the intent to remain in the jurisdiction, the Court concluded that the one year waiting period and the residence requirement "are distinct and independent prerequisites for assistance under these three statutes . . .." *Id.* at 636 and n.16.

Third, the Court rejected the argument that the one year waiting period acted as a safeguard against fraudulent receipt of benefits because "less drastic means are available, and are employed, to minimize that hazard." *Id.* at 637.

Fourth, addressing the argument that the one year waiting period was justified as a means of encouraging new residents to join the labor force promptly, the Court stated, "A state purpose to encourage employment provides no rational basis for imposing a one-year waiting period restriction on new residents only." *Id.* at 637–38.

The threshold question is whether the 60 day waiting period penalizes an individual's right to travel such that it must be shown that the waiting period promotes a "compelling" state interest under the strict scrutiny standard. We conclude that, contrary to the circuit court's finding, the 60 day waiting period does not penalize an individual's right to travel and therefore the tradi-

tional equal protection standard, not strict scrutiny, should be applied such that "equal protection is denied only if the classification is 'without any reasonable basis.' " *Id.* at 638 n.20.

While *Shapiro* makes clear that a one year waiting period serves to penalize the exercise of the right to travel, it is by no means clear that a 60 day waiting period similarly penalizes such right. The unsettled nature of the degree to which a durational residency requirement must impinge upon the right to travel to be unconstitutional was recognized by the Court five years after *Shapiro* in *Memorial Hospital v. Maricopa County,* 415 U.S. 250 (1974):

> Although any durational residence requirement impinges to some extent on the right to travel, the Court in *Shapiro* did not declare such a requirement to be *per se* unconstitutional. The Court's holding was conditioned, 394 U.S., at 638 n.21, by the caveat that some "waiting-period *or* residence requirements . . . may not be penalties upon the exercise of the constitutional right of interstate travel." *The amount of impact required to give rise to the compelling-state-interest test was not made clear.*

*Memorial Hospital,* 415 U.S. at 256–57 (emphasis added in part and footnote omitted).[3]

[3]*Shapiro*'s footnote 21 to which *Memorial Hospital* refers, states:

> We imply no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel.

*Shapiro,* 394 U.S. at 638 n.21.

*Memorial Hospital* held that Arizona's law providing that indigent persons must have resided within the respective county for one year to be eligible for free non-emergency medical care was unconstitutional. However, other than conclude that medical care is at least as much a basic necessity of life to an indigent as welfare, the Court did not further clarify the amount of impact necessary to give rise to the compelling state interest standard:

> Whatever the ultimate parameters of the *Shapiro* penalty analysis, it is at least clear that medical care is as much "a basic necessity of life" to an indigent as welfare assistance.

*Memorial Hospital,* 415 U.S. at 259.[4]

██

Given that the Supreme Court itself recognizes the unsettled nature of the amount of impact necessary to give rise to the compelling state interest standard, and that the parameters of *Shapiro*'s penalty analysis admittedly remain undefined, we conclude that because the 60 day waiting period at issue here is so substantially less onerous than the one year waiting period of *Shapiro,* that it does not operate to penalize an individual's right

---

[4]Similarly, other cases addressing durational residency requirements have not clarified the amount of impact necessary to give rise to the compelling state interest standard. *See Dunn v. Blumstein,* 405 U.S. 330 (1972) (Court struck down Tennessee law providing that to vote, a person must have been a resident of the state for one year and a resident of the county for three months); *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898 (1986) (Court struck down New York law giving civil service employment preference to military veterans who were New York residents at the time of joining).

to travel.[5]

Because we conclude that the 60 day waiting period requirement does not operate as a penalty upon an individual's right to travel, we review the constitutionality of the statute under the traditional equal protection analysis such that the classification will fail equal protection analysis "only if the classification is 'without any reasonable basis.' " *Shapiro,* 394 U.S. at 638 n.20.

Milwaukee County offers several governmental objectives furthered by the 60 day requirement. It asserts that the state has a legitimate interest in "preserving the public fisc" and in "conserving scarce taxpayers' funds." It asserts that "A municipality should not be required to encourage those who would precipitously alter their situation in life without giving any thought to whether there is any reasonable prospect that they will be able to sup-

---

[5]While the central question is whether the 60 day waiting period penalizes an individual's right to travel, Attorney General James E. Doyle, in his Amicus Brief supporting the constitutionality of the statute, discusses several other factors which pointedly distinguish the statutes in *Shapiro* from sec. 49.015, Stats. First, unlike the statutes in *Shapiro,* sec. 49.015, Stats., in no way implicates an individual's benefits under the federal Aid to Families with Dependent Children (AFDC) program. Second, unlike the statutes in *Shapiro,* sec. 49.015(2)(a)-(d), Stats., contains four exceptions making the 60 day waiting period inapplicable where: (1) the person was born in this state, (2) the person has, in the past, resided in Wisconsin for at least 365 days, (3) the person came to Wisconsin to join a close relative who has resided in Wisconsin for at least 180 days before the arrival of the person, and (4) the person came to Wisconsin to accept a bona fide offer of employment and the person was eligible for employment. Third, unlike the statutes in *Shapiro,* sec. 49.015(3)-(4), Stats., provides an exception available in cases of medical emergency and cases of unusual misfortune or hardship.

port themselves." It asserts that the state may legitimately impose a reasonable durational residency requirement "to establish the bona fides of an applicant's residency." It asserts that the durational residency requirement "promotes the state's legitimate interests in preventing fraud and payments from multiple jurisdictions to the same applicant for the same period of time."

We remain cognizant of *Shapiro*'s conclusion that protecting the fiscal integrity of state public assistance programs by conserving taxpayer funds via deterring migration is constitutionally impermissible; that, insofar as a one year waiting period is concerned, establishing an objective test of residency or preventing fraud are not compelling governmental interests; and that encouraging employment provides no rational basis for imposing a one year waiting period.

Nevertheless, we note that *Shapiro* was decided in the context of a durational requirement that penalized the right to travel. In the context of welfare eligibility requirements that do not penalize the right to travel, the objective of encouraging employment has been upheld as a reasonable governmental objective.

In *Dandridge v. Williams,* 397 U.S. 471 (1970), a case decided only one year after *Shapiro,* the Court upheld Maryland's maximum grant regulation which placed a ceiling on the amount of benefits payable to a family under AFDC (Aid to Families with Dependent Children).

Applying the traditional equal protection standard, the Court in *Dandridge* stated:

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution sim-

ply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

*Dandridge*, 397 U.S. at 485.

In the context of a welfare eligibility requirement that did not penalize the right to travel, the Court in *Dandridge* did not conclude that the objective of encouraging employment was unreasonable. In fact, that objective was one of the very reasons the Court upheld Maryland's grant ceiling:

> We need not explore all the reasons that the State advances in justification of the regulation. It is enough that a solid foundation for the regulation can be found in the State's legitimate interest in encouraging employment and in avoiding discrimination between welfare families and the families of the working poor.

*Dandridge*, 397 U.S. at 486.

Similarly, encouraging employment is a very real and practical objective in the case at hand. Milwaukee County specifically asserted in its brief that, "A municipality should not be required to encourage those who would precipitously alter their situation in life without giving any thought to whether there is any reasonable prospect that they will be able to support themselves." Such assertion has the practical import of encouraging those migrating to Wisconsin to seek employment so as to support themselves.

While it may well be true that the 60 day waiting period does not classify persons with perfection in that long time residents are not encouraged to seek employment to the exact same degree as newcomers, perfection or mathematical nicety is not required by the equal protection clause. *Dandridge*, 397 U.S. at 485.

Lastly, while we are not unsympathetic to the situation of individuals seeking to establish themselves in Wisconsin, we recognize that ours is not to pass judgment as to the wisdom of the legislature. To quote *Dandridge:*

> We do not decide today that the Maryland regulation is wise, that it best fulfills the relevant social and economic objectives that Maryland might ideally espouse, or that a more just and humane system could not be devised. Conflicting claims of morality and intelligence are raised by opponents and proponents of almost every measure, certainly including the one before us. But the intractable economic, social, and even philosophical problems presented by public welfare assistance programs are not the business of this Court. The Constitution may impose certain procedural safeguards upon systems of welfare administration. But the Constitution does not empower this Court to second-guess state officials charged with the difficult responsibility of allocating limited public welfare funds among the myriad of potential recipients.

*Dandridge,* 397 U.S. at 487.

We conclude that Wisconsin's 60 day waiting period does not penalize an individual's right to travel. Applying the traditional equal protection analysis, we conclude that Wisconsin's objective of encouraging individuals to support themselves through employment is reasonable and that the 60 day waiting period is rationally related to that objective.

We therefore hold that the 60 day waiting period, as provided in sec. 49.015, Stats., does not violate either the United States or Wisconsin Constitutions.

906

*By the Court.*—The decision of the circuit court is reversed.

HEFFERNAN, CHIEF JUSTICE *(dissenting).* *Shapiro v. Thompson,* 394 U.S. 618 (1969), until overruled, is controlling precedent and mandates a holding that sec. 49.015, Stats., is unconstitutional. It is clear that the reasoning of *Shapiro* is applicable to this case. Applying the strict scrutiny mandated by *Shapiro,* I conclude that the County fails to show a compelling state interest supporting the 60-day residency requirement. Accordingly, I dissent.

In *Shapiro,* the United States Supreme Court reviewed three separate statutes requiring one year of residency to qualify for welfare assistance. The Court reasoned that the statutes created "two classes of needy resident families indistinguishable from each other except that one is composed of residents who have resided a year or more, and the second of residents who have resided less than a year, in the jurisdiction." *Shapiro,* 394 U.S. at 627. In this case, the identical classes are created by sec. 49.015, Stats., except that 60 days, rather than one year, is the dividing line. The Court in *Shapiro* held that because this classification impinged upon the fundamental right to travel, the classification must be justified by a compelling state interest. *Id.* The review in this case should be no different.

The majority concludes that strict scrutiny is not required in this case. They point to the following language of *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 256-57 (1974):

> Although any durational residence requirement impinges to some extent on the right to travel, the Court in *Shapiro* did not declare such a requirement to be *per se* unconstitutional. The Court's holding

907

was conditioned, 394 U.S., at 638 n.21, by the caveat that some 'waiting-period *or* residence requirements . . . may not be penalties upon the exercise of the constitutional right of interstate travel.' [Emphasis in original.] The amount of impact required to give rise to the compelling state-interest test was not made clear.

The majority concludes that because the 60-day waiting period is "substantially less onerous" than the one year waiting period in *Shapiro,* it does not penalize the exercise of the right to travel. Majority op. at 902. I disagree. A brief examination of the full "caveat" in *Shapiro* reveals that it was not at all referring to the length of the residence requirement, but rather to the nature of the right or interest impinged upon.

Note 21 of *Shapiro* provides:

> We imply no view of the validity of waiting-period *or* residence requirements determining eligibility to vote, eligibility for tuition-free education, to obtain a license to practice a profession, to hunt or fish, and so forth. Such requirements may promote compelling state interests on the one hand, or, on the other, may not be penalties upon the exercise of the constitutional right of interstate travel.

*Shapiro,* 394 U.S. at 638 n.21 (emphasis in original). Nothing in *Shapiro* indicates that the length of the residence requirement measured impact on the right of interstate travel. Rather, it is the nature of the right or interest impinged upon which determines the impact, and the holding of *Shapiro* is simply that the denial of the basic necessities of life penalizes the exercise of the right to travel and warrants strict scrutiny of the governmental classification. Thus the majority erroneously

908

interprets both *Shapiro* and *Maricopa County* in reaching the result it desires.

Even assuming however that the length of the residence requirement rather than the nature of the right or interest impinged upon was a relevant inquiry, sec. 49.015, Stats., warrants strict scrutiny. The "amount of impact required to give rise to the compelling state-interest test" must be determined by considering whether the waiting period will deter migration, whether impeding travel is the law's primary goal, and the extent to which the waiting period serves to penalize the exercise of the right to travel. *Maricopa County,* 415 U.S. at 257; *Attorney General of New York v. Soto-Lopez,* 476 U.S. 898, 903 (1986); *Zobel v. Williams,* 457 U.S. 55, 62 n.9 (1982). I conclude that sec. 49.015, Stats., will deter migration, was intended to deter migration, and that the denial of general assistance for 60 days penalizes the exercise of the right to travel. Thus I would accord the statute strict scrutiny.

To paraphrase *Shapiro,* indigent individuals desiring to migrate to Wisconsin, find a new job, and start a new life will doubtless hesitate if they know that they must risk making the move without the possibility of falling back on state welfare assistance during the first two months of residence, when the need may be most acute. *See Shapiro,* 394 U.S. at 629. Representative David Prosser, Jr., one of the authors of the sec. 49.015, Stats., filed an amicus brief which amply demonstrates that the express purpose of the law is to deter migration—to discourage welfare recipients of neighboring states from migrating to Wisconsin to obtain greater welfare benefits.[1]

---

[1] At p. 1 of his amicus brief, Representative Prosser states:

State and county governments and the taxpayers who support them

Most importantly, however, denial of the basic necessities of life for 60 days, as well as one year, penalizes the right to travel. As the circuit court stated in its well-reasoned decision:

> Numerous courts have found that residency requirements of less than one year unconstitutionally implicated the right to travel. *See, e.g., Dunn v. Blumstein,* 405 U.S. 330 (1972) (90-day residency in county to vote); *Hawk v. Fenner,* 396 F. Supp. 1 (D.S.D. 1975) (90-day residency in county for general relief); *Hinnant v. Sebesta,* 363 F. Supp. 398 (M.D. Fla. 1973) (60-day residency in state to vote); *Young v. Gnoss,* 101 Cal. Rptr. 533, 496 P.2d 445 (1972) (90-day residency to vote). *See also, Nielsen v. Social Service Board of North Dakota,* 216 N.W.2d 708 (N.Dak. 1974). No cases have been cited in which a

will have no defense against persons who enter Wisconsin in order to take advantage of this state's generous welfare benefits. The state will have no defense against officials in other states who encourage indigents to come to Wisconsin to receive welfare. We will have to surrender to these persons . . . or alter our welfare system in ways that may adversely affect the most deserving of our own long-time residents.

The basic thrust of Representative Prosser's brief is that *Shapiro* represents bad policy, and therefore this court should ignore it. "[*Shapiro*] was runaway judicial lawmaking, which disregarded history, massively invaded the authority of the states, enormously expanded the power of the federal courts, and created its own hardships. The ruling in *Shapiro* . . . arguably violates the Constitution." This court can not, for public policy reasons, ignore a controlling United States Supreme Court decision.

Representative Prosser also states that a certain law review article "decimated" the *Shapiro* decision. *See* Raoul Berger, *Residence Requirements for Welfare and Voting: A Post Mortem,* 42 Ohio St. L.J. 853 (1981). While the article is critical of *Shapiro,* the article obviously did not overrule *Shapiro. Shapiro,* not Raoul Berger, decides the law on this subject.

durational residency requirement of less than one year was upheld. The issue is not whether 60 days is a reasonable time period, but whether such a delay in the provision of aid to which the applicant is otherwise entitled constitutes a penalty on the right to travel. General relief is a program providing subsistence level assistance with food and shelter needs. These basic necessities of life are viewed with greater constitutional significance, and the withholding of such assistance constitutes a penalty on plaintiffs' right to travel.

I agree. *Shapiro* specifically concluded that denial of the basic necessities of life is a penalty. Sixty days without food and shelter is no less devastating than one year without food or shelter. Language in *Maricopa County* indicates that the conclusion in *Shapiro* that denial of basic necessities is a penalty was unequivocal: "[I]t is at least clear that medical care is as much 'a basic necessity of life' to an indigent as welfare assistance." *Maricopa County*, 415 U.S. at 259. Thus strict scrutiny is required.

Milwaukee County and Representative Prosser assert that the punitive nature of the 60-day residency requirement is softened by the exceptions listed in sec. 49.015(1)(b)1-4, Stats. That subsection exempts persons from the residency requirement if they were born in Wisconsin, previously resided in Wisconsin for at least one year, moved to Wisconsin to join a close relative, or came to Wisconsin to accept a bona fide offer of employment. The obvious implication of these exceptions is that the residency requirement is designed merely to apply to those who move to Wisconsin solely to obtain general assistance. *Shapiro* emphatically rejected such a rationale:

> [A] State may no more try to fence out those indigents who seek higher welfare benefits than it

may try to fence out indigents generally. Implicit in any such distinction is the notion that indigents who enter a State with the hope of securing higher welfare benefits are somehow less deserving than indigents who do not take this consideration into account. But we do not perceive why a mother who is seeking to make a new life for herself and her children should be regarded as less deserving because she considers, among others [sic] factors, the level of a State's public assistance. Surely such a mother is no less deserving than a mother who moves into a particular State in order to take advantage of its better educational facilities.

*Shapiro,* 394 U.S. at 631–32. The point of *Shapiro* is that the state may not create classifications among those seeking general assistance which penalize the right to travel unless the classifications are supported by compelling governmental interests. The additional classifications of sec. 49.015(1)(b)1–4, Stats., serve only to underscore the statute's deterrent purpose, and do not in any way lessen the punitive impact upon the right to travel of those indigents who do not meet one of the exceptions.

Finally, the provision in sec. 49.015(3), Stats., which allows a waiver of the residency requirement in cases of "medical emergency" or "unusual misfortune or hardship" does not remove the statute from strict scrutiny. The "ordinary" misfortune and hardship which occurred in this case and which presumably may occur to other indigents migrating to Wisconsin are a sufficient penalty on the right to travel to warrant strict scrutiny. Moreover the terms "medical emergency" and "unusual misfortune or hardship" are not defined in the statute, and the deterrent intent and effect of the law is abated

little if at all by allowing local general relief agencies the discretion to grant occasional waivers.

Thus, under *Shapiro,* sec. 49.015, Stats., should be upheld as constitutional only if supported by compelling governmental interests. It is not.

While Milwaukee County and Representative Prosser offer several public policy reasons supporting the 60-day waiting period, it is evident that none are compelling governmental interests. In fact, neither the County nor Prosser even argues that the interests are compelling—they both assert only that they provide a rational basis for the classification. Indeed, one of the interests put forth in support of the statute is the need to protect the public fisc, which *Shapiro* and *Maricopa County* clearly held is not compelling. *Shapiro,* 394 U.S. at 633; *Maricopa County,* 415 U.S. at 263. Wisconsin's need to avoid being a "welfare-magnet" may well be significant, but it is insignificant in a constitutional analysis under precedents we are obliged to follow. The County also argues that Wisconsin must be allowed to protect itself from welfare fraud. While undoubtedly this is true, the underpinnings of such need are little different than protecting the public fisc, and no more compelling.[2]

The 60-day waiting period is intended to deter travel to Wisconsin, will deter travel to Wisconsin, and penalizes those who travel to Wisconsin and seek welfare benefits. This is invidious discrimination, and it should

---

[2]The majority does not contend that the public policy factors supporting the law distinguish this case from *Shapiro,* or that there are any compelling governmental interests served by the waiting period. Nor could it under *Shapiro.* Rather, flowing from its erroneous conclusion that the 60-day waiting period does not penalize the right to travel and therefore that strict scrutiny is unnecessary, the majority concludes that the public policy supporting the statute provides a "reasonable basis" for the law.

not be tolerated. The state has failed to show a compelling governmental interest supporting the classification created by sec. 49.015, Stats. Thus, sec. 49.015, Stats., violates the plaintiffs' right to equal protection. I dissent.

I am authorized to state that JUSTICE SHIRLEY S. ABRAHAMSON and JUSTICE WILLIAM A. BABLITCH join this dissenting opinion.