Gwendolyn HICKS, et al., Plaintiff,

v.

Howard A. PETERS, Secretary of the Illinois Department of Human Services, Defendant.

No. 98C3247.

United States District Court,
N.D. Illinois,
Eastern Division.

July 17, 1998.

John Mark Bouman, Margaret Mary Stapleton, Wendy Joyce Pollack, Poverty Law Project, Chicago, IL, Theodora Rand, Carolyn E. Shapiro, National Clearinghouse for Legal Services, Chicago, IL, Henry A Freed-

man, Welfare Law Center, New York City, for Plaintiff.

Mark Allen Lichtenfeld, William D. Leslie, Illinois Attorney General's Office, Chicago, IL, Henry A. Freedman, Welfare Law Center, New York City, for Defendant.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Gwendolyn Hicks, on behalf of herself and other similarly situated plaintiffs, seeks a permanent injunction against the enforcement of Illinois Public Aid Code's multi-tiered durational residency requirement ("the Illinois durational residency requirement"). 305 ILCS 5/11–30.[1] Hicks says that this state legislation violates her constitutional right to travel or migrate from Alabama to Illinois, that the law is not based on any compelling or rational state interest, and that it is prohibited by the Privileges and Immunities Clause of Article IV.

Hicks has applied for welfare benefits in Illinois and has received welfare benefits in Alabama within the last twelve months. Hicks received less money in Alabama than she would receive if she were an Illinois resident for more than twelve months. Illinois has capped the amount of benefits that new residents like Hicks may receive. Under the Illinois durational residency requirement, people in Hicks's position may receive no amount greater than that which they had been paid under their prior state's comparable aid program. The five-year-old Illinois law imposing this multi-tiered durational residency requirement applies only to those new residents who have received aid from their former state within twelve months prior to moving to Illinois. In 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 ("PRWORA"),[2] expressly authorizing states to implement such residency requirements.

## Standard for Permanent Injunction

■ The standard for a permanent injunction is essentially the same as for a preliminary injunction except that in seeking a permanent injunction, Hicks must prove actual success on the merits rather than likelihood of success on the merits. *Hope Clinic v. Ryan*, 995 F.Supp. 847, 853 (N.D.Ill.1998). The other elements Hicks must show are lack of an adequate remedy at law or threat of irreparable harm, that the injury to her if I uphold Illinois's durational residency requirement outweighs the harm to Illinois if I strike it down, and whether public interest will be served if I grant the injunction. *Plummer v. American Institute of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir.1996). A permanent injunction is a final judgment. *Id.*

## Prior Challenges in Other Jurisdictions

With the passage of the PRWORA, welfare recipients have begun anew to challenge the constitutionality of state implementation of residency requirements for payment distribution. Other courts have addressed the constitutionality of other states' welfare residency requirements since Congress passed PRWORA and they have primarily struck down durational residency requirements applying either strict scrutiny or rational basis review. I discuss the most relevant below: [3]

---

**1.** 305 ILCS 5/11–30 reads as follows:

Notwithstanding any other provision of this Code, if an applicant for aid under any Article of this Code has moved to this state from another state, and if the applicant received public aid in that other state under its laws that are equivalent to this Code at any time within the 12 months immediately preceding the date the applicant became a resident of this state, then during the first 12 months that the applicant resides in this state the applicant shall not be eligible to receive aid under any Article of this Code in an amount greater than the amount of comparable aid the applicant received under the laws of the state from which he or she moved to this state. The Illinois Department shall apply for all neces-

sary federal waivers, and implementation of this Section is contingent on the Illinois Department receiving any necessary federal waivers.

**2.** PRWORA, 42 U.S.C. § 604(c) states:

A state operating a program funded under this part may apply to a family the rules (including the benefit amount) of the program funded under this part of another State if the family has moved to the State from the other State and has resided in the State for less than 12 months.

**3.** *See, e.g., Warrick v. Snider*, 2 F.Supp.2d 720 (W.D.Pa.1997) (sixty day durational residency requirement for cash assistance fails both strict

---

The court in *Maldonado v. Houstoun,* 177 F.R.D. 311, 329–30 (E.D.Pa.1997), struck down a state statute that capped welfare benefits at a recipient's former state's levels. The district court applied its interpretation of right-to-travel jurisprudence and held that the plaintiffs could not show that the primary objective of Pennsylvania's residency requirement was to deter migration, that the statute actually deterred such travel, or that it used a classification that penalized the right to travel. Because plaintiffs proved none of these three elements, the court applied rational basis review to the Pennsylvania statute and found that it was not rationally related to its only legitimate governmental purpose of encouraging self-reliance over reliance on welfare. *Id.* at 332–33. Citing *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the court reasoned that the residency requirement "failed miserably" at promoting self-sufficiency. *Id.* at 332. To be rationally related the court reasoned that "logic would also require a similar waiting period for long term residents" and a standard amount that all out of state and non-American citizens ought to receive. *Id.*

In *Westenfelder v. Ferguson,* 998 F.Supp. 146 (D.R.I.1998), a Rhode Island district court struck down a state law requiring a blanket thirty percent reduction for all residents until they lived in Rhode Island for twelve months. The court found that the law constituted a penalty, and therefore triggered strict scrutiny, because it "denie[d] the plaintiffs' benefits needed to ensure their ability to procure basic necessities of life." *Id.* at 154. It also held that the only relevant comparison was newly arrived residents to long-time residents, and that reduction versus complete denial (as in *Shapiro* ) did not create a material difference. The district court went on to find that Rhode Island failed to demonstrate how a durational residency requirement was narrowly tailored to ending dependence on welfare, nor would it likely pass even rational basis review.

In *Roe v. Anderson,* 134 F.3d 1400 (9th Cir.1998), the Ninth Circuit affirmed a lower court ruling preliminarily enjoining the enforcement of a California statute capping new residents' welfare payments at their former levels. The court held that passage of the PRWORA did not affect the constitutional analysis of the California statute because, citing *Shapiro,* 394 U.S. at 641, 89 S.Ct. 1322, Congress cannot authorize the states to violate the Equal Protection Clause. *Roe* 134 F.3d at 1404. The court noted that any deprivation of welfare payments posed the threat of irreparable harm and that the relevant comparison, in an equal protection analysis, is between old and new California residents, not California residents and residents of other states. *Id.* (citing *Attorney General of New York v. Soto–Lopez,* 476 U.S. 898, 904, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986)). *Roe* also affirmed that the Ninth Circuit was adhering to the reasoning of the district court in *Green v. Anderson,* 811 F.Supp. 516 (E.D.Cal.1993), *aff'd,* 26 F.3d 95 (9th Cir. 1994), *vacated as unripe sub nom, Anderson v. Green,* 513 U.S. 557, 115 S.Ct. 1059, 130 L.Ed.2d 1050 (1995). The *Green* court reasoned that California's durational residency requirement placed a penalty on a new resident's right to migrate because it produced substantial disparities in benefit levels, made no accommodation for different states' costs of living, and· did not pass strict scrutiny because the state's interest in reducing welfare costs was not sufficient to justify the disparate treatment of new, needy residents. *Green,* 811 F.Supp. at 516.

■ Hicks argues that Illinois's residency requirement penalizes her constitutionally guaranteed right to travel by denying her a basic necessity of life and therefore triggers strict scrutiny under *Shapiro,* 394 U.S. at 634, 89 S.Ct. 1322, and its progeny. Illinois argues that the passage of PRWORA changes the analysis from that in *Shapiro* and invokes the Spending Clause in Article I, Section 8 of the Constitution. Illinois says that because Congress has expressly allowed the states to impose a durational waiting period for benefits, and because the waiting period provides for the general welfare, no

scrutiny and rational basis review); *Mitchell v. Steffen,* 504 N.W.2d 198 (Minn.1993) (six-month residency requirement for full benefits unconstitutionally burdens the right to travel). *But see*

*Jones v. Milwaukee County,* 168 Wis.2d 892, 485 N.W.2d 21 (1992) (upholding a sixty day residency requirement as rationally related to encouraging individuals to support themselves).

further analysis is needed. Illinois says this is so because the power to spend is only limited in that the spending must provide for the general welfare. This is constitutionally incorrect. It is well established that Congress may not abrogate constitutional rights by authorizing expenditures. *Shapiro,* 394 U.S. at 638–39, 641, 89 S.Ct. 1322; *see also* Laurence H. Tribe, *American Constitutional Law,* § 5–10 at p. 323 (2d ed.1988).

■ Illinois's durational residency requirement distributes benefits unequally and therefore is subject to scrutiny under the Equal Protection Clause of the Fourteenth Amendment. *Zobel v. Williams,* 457 U.S. 55, 60, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982). Hicks argues that the statute must pass the strict scrutiny delineated in *Shapiro,* 394 U.S. at 634–35, 89 S.Ct. 1322 while Illinois says (albeit implicitly) that it need be merely rationally related to a legitimate state purpose. As in *Zobel,* 457 U.S. at 60–61, 102 S.Ct. 2309, I do not reach whether the Illinois statute imposes a penalty on the right to travel because I find that it fails rational basis review as that opinion applies it.[4]

■ Illinois says that its statute is intended to affect Congress's mandate under the PRWORA, that is to promote employment and to end welfare dependence. These goals are legitimate, but a one-year waiting period is not rationally related to these objectives unless it requires a similar waiting period for

its long-term residents.[5] *See Shapiro,* 394 U.S. at 637, 89 S.Ct. 1322 (holding that the suggestion "that the one-year waiting period is justified as a means of encouraging new residents to join the labor force promptly...would also require a similar waiting period for long term residents of [a][s]tate"); *Maldonado,* 177 F.R.D. at 332–33 (providing a detailed analysis of why a durational residency applied only to new residents "fails miserably" to relate rationally to promoting self-sufficiency).

Illinois' tailoring of the law to new residents who have received welfare within the last 12 months does not save the statute. This provision seems to attempt to track those interstate migrants who move to Illinois in search of higher benefits, but is irrelevant to the above criticism. In other words, under *Shapiro,* to encourage self-sufficiency and discourage welfare dependence a broader categorization including long-term, in-state residents is needed. The Illinois statute merely narrows the out-of-state group affected, but does not broaden the limitation to include in-state residents as *Shapiro* requires.

Because the Illinois durational residency requirement's only stated purpose is to encourage self-sufficiency and end welfare dependency, and because it does not distinguish between in-state and out-of-state residents, I find that it fails rational basis review and violates the Equal Protection Clause of the Fourteenth Amendment.[6] Thus Hicks has

4. Commentators have suggested that the *Zobel* court, unwilling to use strict scrutiny, has created a more searching rational basis review for right to travel cases. See, e.g., Lawrence H. Tribe, *American Constitutional Law* § 16–2 ("Such cases [like *Zobel* ], however, seem more the result of dissatisfaction with the existing tools of equal protection analysis for dealing with 'fixed permanent distinctions between...classes of concededly bona fide residents, based on how long they have been in the State,' than of any overall shift in the Court's scrutiny of how well various purposes fit legislatively chosen means.").

5. It is arguable that because the Illinois durational residency requirement does not penalize the right to travel, *Shapiro* does not apply and its imperfect classification that distinguishes long and short-term residents passes rational basis review. *See, e.g., Jones,* 485 N.W.2d at 27. I, however, do not read *Shapiro* to require a penalty on the right to travel as a predicate to its holding that a one-year waiting period for wel-

fare benefits, partial or total, is not rationally related to encouraging new residents to join the labor force promptly. I also note that *Dandridge v. Williams,* 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970), cited *by Jones,* 485 N.W.2d at 27, to support this proposition, did not make any distinction between long and short-term residents in upholding Maryland's welfare cap. Therefore I find that *Dandridge* is distinguishable from the Illinois durational residency requirement.

6. Hicks argues that the Illinois durational residency requirement relates to no conceivable, legitimate governmental interest. In the interest of preventing a motion for reconsideration I find that Hicks is correct. *See, e.g., Shapiro,* 394 U.S. at 629, 89 S.Ct. 1322 (discrediting the welfare magnet theory); *Zobel,* 457 U.S. at 62 n. 9, 102 S.Ct. 2309 (same); *Memorial Hospital,* 415 U.S. at 264–65, 94 S.Ct. 1076 (same), *Shapiro,* 394 U.S. at 632–33, 89 S.Ct. 1322 (discrediting the argument that long-term residents are entitled to more benefits because they have paid taxes long-

succeeded on the merits of her claim.[7]

■ If I were required to, I would also find that the Illinois durational residency requirement did not impose a penalty on the right to travel. A state law implicates the right to travel and triggers strict scrutiny when (1) its primary objective is to impede interstate travel, (2) when it actually deters interstate travel, or (3) when it uses any classification that penalizes the right to travel. *See Soto–Lopez,* 476 U.S. at 903, 106 S.Ct. 2317. Hicks argues that Illinois's durational residency requirement is to discourage poor families from migrating to Illinois, that the statute does actually deter interstate migration, and that it imposes a penalty on the right to travel or migrate from Alabama, and other states with lower benefit plans, to Illinois.

All three of Hicks's arguments, in my view, fail. First, she has not shown that the Illinois residency requirement's primary objective is to deter interstate travel. The only evidence that Hicks presents to support this position is the cover letter of the Illinois Department of Health and Human Services, which reads that the legislation "reduces the incentive for families to migrate to Illinois for the purpose of obtaining higher aid payments." Illinois counters that the primary purpose of the durational residency require-

ment is to promote employment and end welfare. Hicks has insufficient evidence that the statute's primary purpose is to deter migration. By itself, the cover letter does not show that the Illinois legislature's primary intent was to restrict interstate travel among poor families. Similarly, Hicks admits that she cannot show that the Illinois residency requirement actually deters migration. Hicks's own expert has stated that families do not, on a collective basis, migrate to obtain higher benefits.

■ Finally, Hicks argues that the Illinois residency requirement penalizes poor families and individuals for having exercised their right to choose homes in a new state. The Illinois statute differs from those in *Maldonado,* 177 F.R.D. 311, and *Green,* 811 F.Supp. 516, only in that it specifically targets new residents who have received benefits.[8] Illinois says that because its durational residency requirement provides the same benefits that new residents received in their prior state of residence, and does not deprive all newcomers of the basic necessities of life, it is distinguishable from the restriction in *Shapiro* and therefore does not penalize new residents. This is the reasoning in *Maldonado,* 177 F.R.D. at 330–331, and I find it persuasive.[9] Durational residency requirements are not per se penalties. *Memorial*

er); *Zobel* 457 U.S. at 63, 102 S.Ct. 2309 (same); *Memorial Hospital,* 415 U.S. at 266, 94 S.Ct. 1076 (same); *Shapiro,* 394 U.S. at 633, 89 S.Ct. 1322 (discrediting state's claim of need for fiscal integrity); *Memorial Hospital,* 415 U.S. at 263, 94 S.Ct. 1076 (same); *Shapiro,* 394 U.S. at 634–35, 89 S.Ct. 1322 (discrediting state budget predictability).

7. Although I do not find it necessary to reach it here, Hicks's reliance on the Privileges and Immunity Clause of Article IV of the Constitution appears to be misplaced. This argument, proposed by Justice O'Connor in *Zobel,* 457 U.S. at 77, 102 S.Ct. 2309, has never been adopted by a majority of the Justices, and more importantly, is at odds with the Clause's current application. The Equal Protection Clause does not apply to Illinois' application of its laws to its own citizens, which includes Hicks. See *Id.* at 84 n. 3, 102 S.Ct. 2309 ("We long ago held that the Clause has no application to a citizen of the State whose laws are complained of.") (Rehnquist J., dissenting).

8. One could argue that Illinois's law constitutes less of a penalty than California's or Pennsylva-

nia's durational residency requirement because Illinois's law only applies to residents who actually received welfare in their prior state of residence within the last twelve months. Illinois does not make the argument and therefore waives it. Furthermore, I do not see that this makes a difference in determining whether the law constitutes a penalty and therefore triggers strict scrutiny. Instead this limitation deals with the relationship between the law's goal, eliminating welfare dependance, and its execution. Therefore it is appropriate to consider in construing the fit of the law and its objective, not the level of scrutiny required.

9. I do note that *Green,* 811 F.Supp. at 521, and *Roe,* 134 F.3d at 1404 find that a penalty existed under essentially indistinguishable legislation. These courts hold that any limits on welfare payments restrict access to the basic necessities of life, produce substantial disparities in benefits levels among residents of the same state, and make no accommodation for differences in the cost of living that exist between states. I believe it more appropriate to consider these factors in a rational basis review of Illinois's legislation than in the penalty analysis.

*Hospital v. Maricopa County,* 415 U.S. 250, 256, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974). Unlike the *Shapiro* plaintiffs, Hicks does receive some state benefit payments and receives the same amount that she had been receiving in Alabama before she moved to Illinois. For these reasons, were I required to, I would find that Illinois's durational residency requirement does not penalize new residents from exercising their right to travel.

Hicks' proof also meets the other elements necessary for her to obtain a permanent injunction against enforcement of the Illinois durational residency requirement. Hicks has no adequate remedy at law if denied benefits at this time. She is currently receiving $194 per month plus food stamps. She has three children. Undue deprivation of $220 per month, the amount she would receive absent the statute, will cause her irreparable harm. The harm to Hicks and those like her greatly outweighs the administrative and fiscal harm to Illinois if I am reversed. Inconvenience to the State does not trump plaintiffs who are deprived of essential benefits. *See Shapiro,* 394 U.S. at 633, 89 S.Ct. 1322. Finally, it is in the public interest to enjoin enforcement of this unconstitutional statute; it violates Hicks's equal protection rights and threatens her ability to support herself and her family.

### Conclusion

I grant Hicks's motion for a permanent injunction, and enjoin the Department of Human Services from enforcing Illinois Public Aid Code, 305 ILCS 5/11–30. Under relevant precedent, I find that this durational residency requirement is not rationally related to any legitimate governmental purpose, that Hicks will be irreparably harmed if an injunction does not issue, that this harm outweighs any fiscal or administrative harm to Illinois, and that it is in the public interest to do so.