**CHICAGO SCHOOL REFORM BOARD OF TRUSTEES, statutory successor to the Board of Education of the City of Chicago, Plaintiff,**

v.

**DIVERSIFIED PHARMACEUTICAL SERVICES, INC., and Smithkline Beecham, PLC, Defendants.**

No. 98 C 4287.

United States District Court,
N.D. Illinois,
Eastern Division.

March 26, 1999.

---

Robert Raymond Hall, Jr., James A. Wright, Marilyn F. Johnson, Kelly Ann Skalicky, Chicago School Reform Board of Trustees, Chicago, IL, for Plaintiff.

Michael D.L. Olafson, Lindquist and Vennum, Minneapolis, MN, Matthew James Iverson, Litchfield Cavo, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

ANN CLAIRE WILLIAMS, District Judge.

Plaintiff Chicago School Reform Board of Trustees ("the Board") moves for a preliminary and permanent injunction prohibiting defendants Diversified Pharmaceutical Services, Inc. and SmithKline Beecham PLC from continuing an arbitration defendants initiated in the State of Minnesota. For the following reasons, the court grants the Board's motion for a preliminary and permanent injunction.

### Background

The Board had a contract with Diversified Pharmaceutical Services, Inc. and

SmithKline Beecham PLC (collectively "defendants"). Under the terms of the contract, defendants provided the Board with prescription drug services from March 1994 through October 31, 1996. The parties' contract contained a mandatory arbitration clause which provided:

> *Disputes.* In the event that any dispute relating to this Agreement arises between Diversified and Client, the dispute shall be resolved by binding arbitration in accordance with the rules of the American Arbitration Association. In no event may the arbitration be initiated more than one year after the date one party gave written notice of the dispute to the other party.

Although the Board never signed the contract, both parties complied with the terms of the agreement from March 1994 through October 1996.[1] Near the end of the contract's term, a dispute arose over the amount of money the Board owed defendants for the prescription services provided.

On October 17, 1996, defendants claimed that the Board owed them $588,399.25 for prescription services rendered. The Board responded to this demand by asking defendants to check their records and verify the amount claimed. Defendants performed the requested audit, arrived at the same figure, and on November 21, 1996, sent the Board another written demand for the full $588,399.25. One week later, defendants recognized that the Board's account should have been credited $128,417.82 and defendants applied that amount to the Board's outstanding balance.

Even after defendants applied this credit, the Board continued to dispute the amount it owed defendants and asserted that it had made an overpayment of $209,261.27. The Board therefore requested an audit of employee eligibility files—an audit that the Board claimed had never been properly performed. Through correspon-

dence, both parties insisted that their calculation was correct and urged the other to revise its demand. The final letter concerning this dispute was sent on April 10, 1997.

On May 22, 1998, defendants filed a "Demand for Arbitration" in Minneapolis, Minnesota seeking $306,700.45 in damages, plus interest, costs, and attorneys' fees.[2] In response to this arbitration demand, the Board filed this federal lawsuit to enjoin defendants from continuing the Minnesota arbitration. After filing its complaint, the Board moved for a preliminary and permanent injunction to stop the Minnesota arbitration. In its complaint and motion for injunctive relief, the Board asserts that the court should enjoin the arbitration because (1) the Board is not bound by the arbitration clause in the contract because the Board never signed the agreement; and (2) even if the Board is bound by the contract, it should not have to arbitrate because the contract's one year arbitration time limit expired before defendants demanded the arbitration.

This court referred the Board's motion for a preliminary and permanent injunction to Magistrate Judge Bobrick for consideration, and on August 11, 1998, Judge Bobrick issued a Report and Recommendation ("R & R") recommending that the court deny the Board's motion for injunctive relief. For reasons unknown to this court, Judge Bobrick only addressed the Board's request for a *preliminary* injunction; Judge Bobrick did not consider the Board's motion for a *permanent* injunction.

At any rate, with respect to the Board's motion for a preliminary injunction, Judge Bobrick recommended that the court deny the motion because he found that the Board has little chance of success on the merits of its arguments. Specifically, Judge Bobrick held that, under Illinois

---

1. Apparently, defendants drafted the contract. Defendants then sent the Board a couple versions of the contract, but the Board never signed the agreement.

2. The court is uncertain why defendants claimed exactly $306,700.45 in the arbitration proceeding.

law, the Board is probably bound by its contract with defendants even though the Board never signed the agreement. Judge Bobrick also rejected the Board's argument that the time limitation in the contract precluded the arbitration. In reaching this conclusion, Judge Bobrick ruled that the contract's timeliness requirement was a "procedural" issue that the arbitrator, not the court, should decide. (August 11, 1998 R & R at 8 (citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964)).) Because Judge Bobrick concluded that the Board lacked a "better than negligible chance of success on the merits," (August 11, 1998 R & R at 11), Judge Bobrick recommended that the court deny the Board's motion for a preliminary and permanent injunction.

The Board timely filed objections to Magistrate Judge Bobrick's August 11, 1999 R & R with this court. In its objections, the Board addressed every element required to obtain the preliminary and permanent injunctive relief it sought. However, because Judge Bobrick only addressed the Board's likelihood of success on the merits, this court limited its review of Judge Bobrick's R & R to that issue. In a November 6, 1998 Order, this court adopted Judge Bobrick's August 11, 1998 R & R in part and rejected it in part. The court agreed with Judge Bobrick's conclusion that the Board would probably not succeed on its "no signature" argument.

The court, however, disagreed with Judge Bobrick's conclusion that the arbitrator must decide whether the time limitation in the contract precluded the arbitration. Relying on the Seventh Circuit's opinions in *Geneva Securities, Inc. v. Johnson,* 138 F.3d 688, 691–92 (7th Cir. 1998), *Smith Barney, Inc. v. Schell,* 53 F.3d 807, 809 (7th Cir.1995), and *Edward D. Jones & Co. v. Sorrells,* 957 F.2d 509, 514 (7th Cir.1992), this court held that time constraints on arbitration proceedings are substantive and jurisdictional rather than procedural. Accordingly, the court ruled that such questions of arbitrability must be decided by courts rather than arbitrators. (*See* Nov. 6, 1998 Order.)

In reaching this conclusion, the court noted that, unlike *Johnson, Schell,* and *Sorrells,* the time restriction in this case comes from the parties' contract. In contrast, the time limits in *Johnson, Schell,* and *Sorrells* arose out of a rule promulgated by an arbitration association known as the National Association of Securities Dealers ("NASD"). The court concluded, however, that the source of the time limit on arbitrability was irrelevant. The court therefore held that regardless of where the time limit originated, the impact on the question of arbitrability is the same. That is, the court, not the arbitrator, must decide whether the parties have agreed to arbitrate the claims. This court held that:

> [s]ince the court, and not the arbitrator, must determine whether the Board's timeliness argument bars the pending arbitration, Magistrate Judge Bobrick erred by holding that the Board would not succeed on this argument because it was beyond the province of the court. Based on the evidence, this court concludes that the Board has established a better than negligible chance of succeeding on the merits of this argument. In fact, the evidence shows that the Board has a very good chance of prevailing on its argument that the time limit in the contract bars the Minnesota arbitration.

(Nov. 6, 1998 Order.) Having found that the Board established a good chance of succeeding on its argument that defendants are barred from arbitrating the dispute, the court remanded the case to Judge Bobrick for findings and a recommendation on the other elements of the injunctive relief sought by the Board.

On March 5, 1999, Magistrate Judge Bobrick issued a second R & R, and again, only considered the Board's motion for a *preliminary* injunction. This time, however, Judge Bobrick analyzed all of the elements required to obtain a preliminary injunction. In analyzing the Board's likelihood of success on the merits, Judge Bo-

brick adopted this court's view that the court, rather than the arbitrator, must determine whether defendants timely filed their arbitration claim. Applying this rule to the undisputed evidence, Magistrate Bobrick found that the Board has a good chance of succeeding on its argument that defendants' arbitration is time-barred. After considering all of the facts and remaining legal requirements, Judge Bobrick held that the Board is entitled to a preliminary injunction enjoining the Minnesota arbitration. In response to this adverse ruling, defendants timely filed objections to Judge Bobrick's March 5, 1999 R & R with this court.

### Analysis

■ When a party objects to a magistrate judge's recommendations, "[t]he district court is required to conduct a *de novo* determination of those portions of the magistrate judge's report and recommendations to which objections have been filed." *Goffman v. Gross*, 59 F.3d 668, 671 (7th Cir.1995). However, this does not mean the district court must conduct a *de novo* hearing, "[r]ather the district court has discretion to 'accept, reject, modify, in whole or in part, the findings or recommendations made by the magistrate.'" *Id.* (quoting 28 U.S.C. § 636(b)(1)).

After reviewing the parties' submissions and the factual record in this case, Magistrate Judge Bobrick recommended that the court grant the Board's motion for a preliminary injunction. However, as noted, Magistrate Judge Bobrick did not address the Board's request for a permanent injunction. Since the Board originally sought a preliminary injunction *and* a permanent injunction, this court will consider both requests. In doing so, the court notes that defendants have known that the Board is seeking both a preliminary and permanent injunction since the Board first filed its motion.[3] Because defendants have been on notice that the Board seeks both a

permanent and preliminary injunction, the court's decision will not prejudice defendants.

■ "The standard for a permanent injunction is essentially the same as for a preliminary injunction, except that in seeking a permanent injunction, [the Board] must prove actual success on the merits rather than the likelihood of success on the merits." *Hicks v. Peters*, 10 F.Supp.2d 1003, 1004 (N.D.Ill.1998) (citing *Hope Clinic v. Ryan*, 995 F.Supp. 847, 853 (N.D.Ill. 1998)). Therefore, to obtain a permanent injunction, the Board must show (1) actual success on the merits; (2) that the Board does not have an adequate remedy at law or that it will suffer irreparable harm without an injunction; (3) the balance of harms between the parties favors entering the injunction; and (4) entry of the injunction will not harm the public interest. *Hicks*, 10 F.Supp.2d at 1004 (citing *Plummer v. American Institute of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir.1996)); *see also Intervisual Communications, Inc. v. Volkert*, 975 F.Supp. 1092, 1104 (N.D.Ill. 1997). Since the elements of a preliminary and permanent injunction are essentially the same, but a permanent injunction carries a higher burden of proof, the court will analyze the Board's motion as a motion for a permanent injunction. If the Board satisfies its burden of proof to obtain a permanent injunction, then it has also satisfied its lesser burden of proof for a preliminary injunction.

### I. Success on the Merits

Defendants chiefly object to this court's previous holding, and and Judge Bobrick's recent conclusion, that the Board should prevail on the merits. When reviewing Judge Bobrick's August 11, 1999 R & R, this court found that the Board has very good chance of succeeding on its argument that the contractual time limit precludes

---

**3.** This fact is evidenced by defendants response to the Board's motion. Defendants titled that response, "Memorandum of Defendants Diversified Pharmaceutical Services,

Inc. and SmithKline Beecham PLC in Opposition to the Motion of Plaintiff Chicago School Reform Board of Trustees for Preliminary and Permanent Injunction."

the arbitration. The court reached this conclusion because the undisputed facts show that defendants did not initiate the arbitration within the one year time limit imposed by the parties' agreement. Before making this decision, however, the court first determined that the court, not the arbitrator, is the proper authority to decide whether the timeliness provision prohibits the arbitration.

■ Defendants now object to Judge Bobrick's R & R and this court's previous ruling. Defendants insist that the court erred when it held that the court, rather than the arbitrator, should decide whether defendants' arbitration was timely filed. Defendants therefore assert that the Board has no chance of succeeding on the merits of its judicial complaint because the arbitrator, not the court, must resolve any dispute over the timeliness of the arbitration.

In support of their argument, defendants rely on the factual distinction that this court noted between this case and *Johnson, Schell,* and *Sorrells.* Specifically, this case involves a time limit found in the terms of the agreement; whereas, the limitation period in *Johnson, Schell,* and *Sorrells* came from an arbitration association rule. According to defendants, this factual distinction is a legally critical one. That is to say, defendants argue that if an arbitration time limit comes from a source outside the four corners of the contract, then the court must decide whether the time limit bars the arbitration. However, defendants contend, if the contract itself establishes the time limitation, then the arbitrator must decide whether the arbitration claims are timely.

The court cannot discern any principled reason why the source of the arbitration time limit should affect whether the court or the arbitrator determines the timeliness of an arbitration claim. And, although defendants insist that this distinction constitutes a "significant difference," defendants fail to offer any suggestions why the difference should impact the court's analysis. Instead, defendants summarily assert

that *Sorrells* held that arbitration association rules are "eligibility requirements that define the limits of arbitral jurisdiction and [*Sorrells*] expressly distinguished limitations or contractual timeliness issues that are to be resolved by arbitrators." (Defs.' Objections at 2 (citing *Sorrells,* 957 F.2d at 512–14).)

This court has scoured the *Sorrells* opinion and, contrary to defendants' assertion, did not locate any language that expressly distinguished "contractual timeliness issues." Rather, *Sorrells* actually supports the court's conclusion that the source of the arbitration time limit is not a legally significant fact. In *Sorrells,* the court observed that arbitration association rules "limit the range of disputes the parties contractually agreed to arbitrate, thus limiting the jurisdiction of the ... arbitrators. The Supreme Court has made clear that defining the limits of arbitral jurisdiction is generally the function of courts, not arbitrators." *Sorrells,* 957 F.2d at 514. Similarly, contractual terms that expressly prohibit arbitrating stale claims also "limit the range of disputes the parties contractually agreed to arbitrate." Since, as *Sorrells* held, the court must define the range of disputes that the parties agreed to arbitrate, the court sees no reason to treat a time limitation imposed by an arbitration association rule any differently than a time limit in the parties' contract. Simply put, the source of the time limit does not affect the court's ability to apply that limitation period to the facts of a case.

This conclusion is consistent with the Supreme Court's most recent pronouncement on the "who decides" issue. In *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Court held that "just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, ... so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter." *Id.* at 943, 115 S.Ct. 1920. Because the issue of which

forum must determine arbitrability is so critical, the Court instructed that lower courts should "not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Id.* at 944, 115 S.Ct. 1920.

Since the critical inquiry for who decides arbitrability of claims is the parties' intent, collateral facts such as the origin of the time limit will not affect whether parties intended for a court or an arbitrator to decide the timeliness of an arbitration claim. Rather, the legally significant facts to analyze are the terms of the parties' agreement. *First Options*, 514 U.S. at 944, 115 S.Ct. 1920. If the agreement contains clear and unmistakable evidence that the parties intended for the arbitrator to decide timeliness questions, then the court must allow the arbitrator to make that decision. However, if the parties' contract is silent on the issue, and there is no other evidence from which the court can clearly and unmistakably conclude that the parties intended for the arbitrator to decide the issue, then courts, not arbitrators, must determine whether the parties agreed to arbitrate specific claims or subject matter. *First Options*, 514 U.S. at 944, 115 S.Ct. 1920.

Applying the reasoning of *First Options* to this case, it becomes clear that this court, not the arbitrator, must decide the timeliness of defendants' arbitration claim. There is no evidence in the record suggesting that the parties intended the arbitrator to define its own jurisdiction. Nor is there evidence that the parties meant for the arbitrator to decide the timeliness of arbitration claims. In the absence of "clear and unmistakable evidence" showing otherwise, the court must conclude that the

parties intended for the court to resolve all disputes over arbitrability of claims, including time restrictions that limit the arbitration.

Defendants rely on *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964) and *Beer, Soft Drink, etc. Union Number 744 v. Metropolitan Distributors, Inc.*, 763 F.2d 300 (7th Cir.1985) to support their theory that if an arbitral time limit is defined in the contract, then the arbitrator must determine whether the claim is timely.[4] The court finds both of these cases distinguishable for several reasons. First of all, although not expressly doing so, the Supreme Court seems to have abandoned the "substantive" versus "procedural" dichotomy articulated in *John Wiley*. As this court explained, under the *First Options* decision, the issue of whether arbitrability must be decided by a court or an arbitrator turns solely on the contracting parties' intent. In this case, there is no evidence that the parties intended for the arbitrator to decide the timeliness of an arbitration. Thus, under *First Options*, the court must rule on this issue.

Nevertheless, even if the "procedural" versus "substantive" analysis survived *First Options*, the court also finds *John Wiley* and *Metropolitan Distributors* distinguishable because those cases addressed the enforcement of collective bargaining agreements. Those labor law cases dealt with complicated grievance procedures under collective bargaining agreements that are not present in this case. For example, in *John Wiley*, the issue was whether the union had complied with the first two steps of a three-step grievance procedure. The Court declined

---

4. Ignoring Seventh Circuit Rule 53(b)(2), defendants also cite the unreported case of *Chicago Truck Drivers, Helpers and Warehouse Workers Union v. Builders Plumbing & Heating Supply Co.*, 172 F.3d 52 , 1999 WL 38584 (7th Cir.1999) to support their argument that the arbitrator must decide the timeliness issue. Under Seventh Circuit Rule 53(b)(2)(iv), "Except to support a claim of res judicata, collateral estoppel, or law of the case, [unreported decisions] *shall not be cited or used as precedent (A) in any federal court within the circuit in any written document or in oral argument; or (B) by any such court for any purpose.*" (Emphasis added). Therefore, the court will not discuss the *Builders Plumbing & Heating Supply* case.

to involve itself in the thicket of multi-layered grievance procedures by stating:

> Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it. In this case, for example, the Union argues that Wiley's consistent refusal to recognize the Union's representative status after the merger made it "utterly futile—and a little bit ridiculous to follow the grievance steps as set forth in the contract." Brief, p. 41. In addition, the Union argues that time limitations in the grievance procedure are not controlling because Wiley's violations of the bargaining agreement were "continuing." These arguments in response to Wiley's "procedural" claim are meaningless unless set in the background of the merger and the negotiations surrounding it.
>
> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration. In this case, one's view of the Union's responses to Wiley's "procedural" arguments depends to a large extent on how one answers questions bearing on the basic issue, the effect of the merger; e.g., whether or not the merger was a possibility considered by Wiley and the Union during the negotiation of the contract. It would be a curious rule which required that intertwined issues of "substance" and "procedure" growing out of a single dispute and raising the same questions on the same facts had to be carved up between two different forums, one deciding after the other. Neither logic nor considerations of policy compel such a result.

*John Wiley*, 376 U.S. at 556–57, 84 S.Ct. 909. Thus, because resolving the "procedural" details of a three-step grievance procedure necessarily involved a determination on the merits of the parties' dispute, the Court held that the issue was one for the arbitrator to decide. *Id.*

In contrast to *John Wiley*, this case does not involve a complex a three-step grievance procedure. Rather, this case addresses a commercial transaction based on a contract with a very straight-forward arbitration limitation period. The time limitation in this case simply provides that "[i]n no event may the arbitration be initiated more than one year after the date one party gave written notice of the dispute to the other party." Unlike the detailed grievance procedure in *John Wiley*, the court will be able to apply the time limit in this case without delving into the merits of the parties' dispute. Because the court can resolve the issue of the arbitration's time limit without addressing the merits, the reasoning of *John Wiley* does not apply to this case.

Finally, *John Wiley* expressly recognized the potential for a situation like the one in this case when the Court remarked that "a court could deny arbitration only if it could confidently be said not only that a claim was ... within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award." *John Wiley* 376 U.S. at 557–58, 84 S.Ct. 909. This observation applies to this case. Here, the timeliness issue is within the purview of the court because the parties have not clearly and unmistakably expressed an intent to have the arbitrator decide the timeliness issue. Similarly, enforcement of the limitations period in this case bars the entire arbitration rather than limiting or qualifying the arbitration award. Thus, by holding that this court rather than the arbitrator must decide the limitation period, the court does not run afoul of the *John Wiley* decision.

■ Turning to the facts of this case, the parties' dispute apparently began on October 17, 1996 when defendants claimed in writing that the Board owed them $588,-

399.25 for services rendered. On November 21, 1996, defendants made another written demand for the full $588,399.25. The Board, however, disputed this claim and asserted that it had made an overpayment of $209,261.27. Through correspondence that lasted until April 10, 1997, both parties insisted that their calculation was correct and urged the other to revise its demand. However, defendants did not file their arbitration claim until May 22, 1998—more than one year after both parties had exchanged written correspondence memorializing the existence of a dispute.

Under the clear and unambiguous terms of the contract, "[i]n no event may the arbitration be initiated more than one year after the date one party gave written notice of the dispute to the other party." It is undisputed that the parties had both given and received written notice of the dispute as early as October and November 1997. This written notice of the dispute clearly triggered the one year limit for filing an arbitration. However, as noted, defendants did not file their demand for arbitration until May 22, 1998—about a year and a half after both parties had provided and received written notice of the underlying dispute. Accordingly, based on the undisputed facts, the court finds that the Board has actually prevailed on its argument that the arbitration is barred because defendant did not file the arbitration within "one year after the date one party gave written notice of the dispute to the other party." [5] The Board has therefore satisfied the first and most hotly contested element of its motion for a preliminary and permanent injunction.

## II. Remaining Objections

Defendants also object to Magistrate Judge Bobrick's findings on the other required elements of a preliminary and permanent injunction. Those arguments, however, are so conclusory and under-developed as to virtually constitute a waiver of these issues. The court has carefully reviewed Magistrate Judge Bobrick's March 5, 1999 R & R and adopts his findings concerning the remaining elements of injunctive relief. Nevertheless, the court will address each of defendants' objections to Judge Bobrick's findings.

■ Defendants first argue that the Board has an adequate remedy at law because the Board may raise its timeliness defense with the arbitrator. According to defendants, if the arbitrator decides against the Board on this issue, the Board may ask a court to vacate the arbitrator's ruling. The court rejects this argument because it ignores the practical effect of sending the timeliness issue to the arbitrator. As the Supreme Court highlighted in *First Options,* when the court addresses an issue of arbitrability before the arbitrator, the court's scope of review is unlimited. *First Options* 514 U.S. at 942, 115 S.Ct. 1920. On the other hand, if the arbitrator decides a question of arbitrability before the court, then the court's review of that resolution is extremely narrow and the losing party "in effect, has relinquished much of that right's practical value." *Id.* In this case, if the arbitrator were to decide the timeliness issue against the Board, then, in view of the extremely narrow standard of review applied to arbitrator's decisions, the Board would most likely be stuck with that ruling. Thus, defendants' argument that the Board has an adequate remedy at law because it may seek judicial review of an arbitrator's decision is, for all practical purposes, based on an empty promise.

The court also rejects defendants' argument because it ignores the very purpose for the Board's lawsuit in this court. The Board presumably brought this action because it never agreed to arbitrate issues that are more than one year old. Under defendants' theory, however, the court

5. Even using the date of the parties' last correspondence regarding the dispute does not bring defendants' arbitration demand within the one year time limit for filing an arbitration. The final letter concerning the dispute was sent on April 10, 1997—thirteen months before defendants filed their demand for arbitration.

should simply disregard the Board's contractual rights and force the Board to arbitrate claims that are clearly unarbitrable. Simply put, this argument makes no sense because it compels the Board to endure an arbitration that it has no legal obligation to defend. Therefore, the court concludes that the Board has no adequate remedy at law.

■ Nevertheless, even if the Board did have an adequate remedy at law, the Board has shown the alternative to this requirement—that it will suffer irreparable harm if an injunction is not entered. *See Plummer v. American Institute of Certified Public Accountants*, 97 F.3d 220, 229 (7th Cir.1996) (holding that to obtain injunctive relief, moving party must prove *either* no adequate remedy at law, *or* that it will suffer irreparable harm without an injunction). In factual circumstances very similar to this case, several courts have held that forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes *per se* irreparable harm. *See McLaughlin Gormley King Co. v. Terminix Int'l Co.*, 105 F.3d 1192, 1194 (8th Cir.1997); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir.1990); *Mount Ararat Cemetery v. Cemetery Workers and Greens Attendants Union, Local 365*, 975 F.Supp. 445, 447 (S.D.N.Y. 1997). This court agrees with the reasoning of these courts. The Supreme Court has made it abundantly clear that a party cannot be forced to arbitrate issues that it did not agree to arbitrate. *See AT & T Technologies v. Communications Workers of America*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). Forcing a party to arbitrate a matter that the party never agreed to arbitrate, regardless of the final result through arbitration or judicial review, unalterably deprives the party of its right to select the forum in which it wishes to resolve disputes. The court therefore finds that sending this case to arbitration would cause the Board irreparable harm.

■ Defendants next assert that the balance of harms favors denying injunctive relief and forcing the parties to arbitrate because "the Board agreed to arbitration." According to defendants,

> the Board cannot be harmed by having to proceed with the arbitration to which it agreed. Should the injunction stand, however, [defendants] will be denied [their] contract rights and, therefore, would be the party harmed.

(Defs.'s Objections at 4.) This argument fails because *neither party agreed to arbitrate claims more than one year old.* The contract is clear and unambiguous on this point. Thus, it is disinguous for defendants to imply that the Board agreed to arbitrate all disputes without qualification. This is clearly not the case. Rather, both parties only agreed to arbitrate claims that were initiated "one year after the date one party gave written notice of the dispute to the other party." Since both parties agreed to this condition of arbitration, it would violate both parties' contractual to rights to force them into arbitration. The court therefore rejects this argument and finds that the balance of harms favors the entry of both a preliminary and permanent injunction.

■ In its entirety, defendants' last objection to Magistrate Judge Bobrick's R & R states: "Finally, though the Magistrate Judge found the rights of third parties not specifically involved here, the public interest also strongly favors arbitration." (Defs.' Objections at 5 (citing *Niro v. Fearn Int'l, Inc.*, 827 F.2d 173, 177 (7th Cir.1987).)) The court agrees with Judge Bobrick that this case does not implicate the rights of third parties. However, to the extent this case does involve third parties, the public interest favors injunctive relief. While defendants are correct that the public interest generally favors arbitration, this policy is based on the presumption that the subject of the arbitration is one that the parties actually agreed to arbitrate. In this case, the parties did not agree to arbitrate their current dispute because the arbitration was initiated outside the one year time limit.

Since this dispute celebrated its first birthday months before defendants filed the arbitration, the public interest favors a preliminary injunction halting the untimely arbitration.

### Conclusion

The court grants the Board's motion for a preliminary and permanent injunction [docs. 4–1 and 4–2]. To the extent it does not conflict with this opinion, the court adopts in full Magistrate Judge Bobrick's well-reasoned March 5, 1999 Report and Recommendation. Defendants are preliminarily and permanently enjoined from pursuing the arbitration they initiated in the State of Minnesota.