**VICTOR G. SCHNEIDER, Plaintiff**

**v.**

**HENRITA TODMAN, Supervisor of Elections and THE BOARD OF ELECTIONS of the Government of the Virgin Islands, District of St. Thomas and St. John, Defendants**

Civil No. 360-1976

District Court of the Virgin Islands

Div. of St. Thomas and St. John

July 13, 1976

VICTOR G. SCHNEIDER, ESQ., St. Thomas, V.I., RICHARDS & MAYNARD, ESQS. (DESMOND L. MAYNARD, of counsel), St. Thomas, V.I., *for plaintiff*

ATTORNEY GENERAL OF THE VIRGIN ISLANDS (WILLIAM NEFF, ESQ., of counsel), Dept. of Law, St. Thomas, V.I., *for defendants*

CHRISTIAN, *Chief Judge*

## OPINION

Plaintiff Victor Schneider filed a nominating petition as a candidate for a seat in the Legislature of the Virgin Islands. His petition, ultimately in order in all formal respects, was rejected by the Supervisor of Elections on the ground that he is not eligible to be a

candidate for the Legislature since he has been residing less than three years in the electoral district for which he has declared. Such administrative remedies as were available to him have been diligently pursued but without success. His cause is therefore ripe for judicial consideration and determination.

In his suit Schneider has named as Defendants Henrita Todman, Supervisor of Elections, as well as the Board of Elections of the legislative district of St. Thomas and St. John. He has appealed to the Court for a judgment declaring that he is a qualified candidate for legislative office, and enjoining the Defendants from further debarring his candidacy.

In rejecting Plaintiff's nominating petition, the Supervisor of Elections relied on Act No. 3221 (Bill No. 5438) now codified at section 103 of Title 2 of the Virgin Islands Code. That section provides:

> No person is eligible to be a member of the Legislature who does not meet the requirements set forth in section 6(b) of the Revised Organic Act of the Virgin Islands. Additionally, no person is eligible to be a senator from a legislative district unless he has been a bona fide resident of the particular district for at least three consecutive years next preceding the date of his election; provided, that no person may be a candidate for the one at large seat unless he will have been a bona fide resident of St. John for at least three consecutive years next preceding the general election.

The pertinent portion of section 6(b) of the Revised Organic Act of the Virgin Islands referred to in section 103, reads:

> No person shall be eligible to be a member of the Legislature who is not a citizen of the United States, who has not attained the age of 21 years; who is not a qualified voter; who has not been a bona fide resident of the Virgin Islands for at least three years next preceding the date of the election. . . .

Plaintiff challenges the action of the Defendants on six grounds.

185

1. That Act No. 3221 was not intended to be a permanent law of the Virgin Islands but was enacted for the 1972 elections only.

2. That he does, in fact, meet the three-year residency requirement since he will have resided in the legislative district for three years by the time he takes the oath of office, if elected.

3. That eligibility for the office of senator in the Legislature of the Virgin Islands was laid down by the Congress in section 6(b) of the Revised Organic Act, and that the Legislature of the Virgin Islands is powerless to alter those requirements in any way.

4. That section 103 of Title 2 as here applied by the Supervisor of Elections is constitutionally infirm on "equal protection" grounds.

5. That there is an inconsistency between section 103 of Title 3 and 6(b) of the Revised Organic Act, and consequently the former must fall.

6. That Act No. 3221 violates the 14th and 15th Amendments to the United States Constitution as extended to this territory by the Revised Organic Act, and the Voting Rights Acts of 1965, because it places an impermissible burden on the right to vote.

Addressing first the issue of whether Act No. 3221 was intended to govern the 1972 election only, I dispose of that contention with a flat rejection, for it flies in the face of the plain meaning of the words used by the Legislature. In section 2 the Act states "this act shall become effective commencing with the election of 1972 and the term of the Tenth Legislature of the Virgin Islands." It is difficult to imagine more open-ended language. The effective date is clearly set but no limiting time is prescribed. Plaintiff would seek comfort for his position from some fragmentary and inconclusive statements made in the debate when

the bill was being considered, but there is nothing in the proceedings of the Legislature that would indicate that those passing expressions were adopted. In any event, I see no need for resort to legislative history as I find absolutely no ambiguity in the language of the Act.

In the view this Court takes of the case none of the remaining contentions of Plaintiff, save one, need be discussed because the equal protection claim is entirely dispositive of the suit.

 Though not one of the rights specifically enumerated in the Constitution of the United States, the right to travel has too long been recognized as fundamental to permit argument.

> For all the great purposes for which the Federal government was formed, we are one people, with one common country. We are all citizens of the United States; and, as members of the same community, must have the right to pass and repass through every part of it without interruption, as freely as in our own States.

It was with hearty approval that the Supreme Court of the United States in Shapiro v. Thompson, 394 U.S. 618 (1969), echoed the above language from the Passenger Cases, 12 L.E.D. 702 (1840). By the clear implication of decided cases, the right to travel is not restricted to inter-state commerce but extends to intra-state (in our context intra-territorial) movements as well. King v. New Rochelle Housing Authority, 442 F.2d 646, 648 (2nd Cir. 1971); Cole v. Housing Authority of City of Newport, 433 F. 807, 809 (1st Cir. 1970); Hawk v. Fenner, 396 F.Supp. 1 (D.C. S.D. 1975). See § 3 of the Revised Organic Act of 1954, as amended, August 23, 1968, Pub. L. 90–496, § 11, 82 Stat. 841. See also, Memorial Hospital v. Maricopa County, 415 U.S. 250 (1974); Dunn v. Blumstein, 405 U.S. 330 (1971). This freedom of movement, this unity of political existence expressed in the Passenger Cases is

entirely consonant with the philosophy and purpose of the Revised Organic Act of 1954, for what the Congress sought to implant in the Virgin Islands was a single unified governmental entity, as it struck down the artificial barriers which divided the Virgin Islands politically into two separate municipalities, each with its own legislative body. The unification of the Government of the Virgin Islands militates in favor of free intercourse between the islands' districts.

██ Particularly since Shapiro v. Thompson, supra, it has become virtually axiomatic that where there is impingement upon the inhabitant's right to travel, whatever form such encroachment might take, the responsible governmental body can justify the invasion only upon a showing that it is necessitated by a compelling state (territorial) interest. Memorial Hospital v. Maricopa County, supra; Dunn v. Blumstein, supra. Measured against so demanding a standard the three-year durational residency requirement imposed by section 103 of Title 2 of the Virgin Islands Code cannot stand.

██ The now time-worn justification which Defendants here proffer is but a lame excuse. It is suggested that the three-year residency requirement serves to insure that candidates for legislative office will by the date of the election have acquired a certain degree of familiarity with the legislative district and its people, and that reciprocally, knowledge and understanding of and about the candidate would have been acquired by the electorate of the district. That so long a period is required for a candidate to be well informed regarding his district is at best open to question. See Shelton v. Tucker, 364 U.S. 479 (1960). Totally fallacious is the notion that the electorate needs, or indeed would have, three years to scrutinize the candidate. The latter is called to make his intention known no earlier than

188

the month of June for an election to take place in November. It follows that before the June deadline the electorate cannot know of a certainty who is and who is not a candidate. Thus, the familiarization period runs for about six months only. Why then the additional two and one-half years? The exaction of that additional time by section 103 boils down to nothing more or less than an unwarrantable penalty in an area in which the legislature is without authority to penalize. By any standard, therefore, the three-year durational residency requirement is unreasonable and is here declared void and of no effect. Consequently, the candidacy of the Plaintiff must be determined by the legal requirements as they existed prior to the passage of Bill No. 5438.

Because it is a virtual certainty that an attempt will be made to fix some shorter residency requirement, a brief historical sketch, by way of background, bearing on residency requirement for legislative office in the Virgin Islands might prove a helpful guide.

As early as March 26, 1852, there was provision for a joint colonial council in the Virgin Islands which performed legislative functions, among others. This 20-man unicameral body[1] met in regular annual sessions in Christiansted. To stand for election in any of the four electoral districts, the candidate was required to be a resident of that district for one year prior to the election.

A colonial law of November 27, 1863, introduced the concept of two municipalities, each with its separate colonial council. To be a candidate for either municipal council, one must have resided at least two years in the municipality and six months in the district at the time of election.

---

[1] Four members by royal appointment; five elected from the district of Christiansted, three from the district of Frederiksted; six from the district of St. Thomas; and two from the district of St. John.

The colonial law of April 6, 1906, brought many changes but left intact the residence requirement of two years in the municipality and six months at the time of election in the electoral district in which the candidate "sojourned". Matters remained in this state until the 1936 Organic Act. Significantly, in that Act the Congress retained the separate municipality idea as well as the existing eligibility requirements for membership in the municipal councils, except that it imposed a three-year Virgin Islands residency immediately preceding the date of the election while dropping entirely the demand of residence in the municipality or district. With the advent of the unified unicameral legislature in the Revised Organic Act of 1954 those eligibility requirements of the 1936 Act were adopted intact. Notably, the Revised Organic Act set up legislative districts but specified no residence requirements. Furthermore, even in its latest amendment to the Revised Organic Act the Congress did not see fit to mandate a district residence requirement. History, admittedly, is no infallible index of what will pass constitutional muster. It bears mention, however, that history should not be cavalierly ignored.

For further direction, if, indeed, a new operational residency requirement is to be fashioned, pertinent pronouncements from a small smattering of judicial opinions may be profitably noticed.

Durational residence laws penalize those persons who have traveled from one place to another to establish a new residence during the qualifying period. Such laws divide residents into two classes, old residents and new residents, and discriminate against the latter. . . .

Dunn v. Blumstein at p. 334.

. . . we look to the benefit withheld by the classification . . . or the basis for the classification . . . we conclude that the State must show

190

a substantial and compelling reason for imposing durational residence requirements.

## Id. at 335.

In sum, durational residence laws must be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are "necessary to promote a compelling governmental interest."

## Id. at 342.

It is not sufficient for the State to show that durational residence requirements further a very substantial state interest. In pursuing that important interest, the State cannot choose means that unnecessarily burden or restrict constitutionally protected activity.

## Id. at 343.

In sharp contrast to this fear of an unduly lengthy ballot is an increasing pressure for broader access to the ballot. Thus, while progressive thought in the first half of the century was concerned with restricting the ballot to achieve voting rationality, recent decades brought an enlarged demand for an expansion of political opportunity.

## Lubin v. Parish, 415 U.S. 709, 713.

[T]he right to vote is heavily burdened if that vote may be cast only for one of the two parties at a time when other parties are clamoring for a place on the ballot.

## Id. at 716.

The point, of course, is that ballot access must be genuinely open to all, subject to reasonable requirements.

## Id. at 719.

A candidate residency requirement "has a real and appreciable impact on the exercise of the franchise . . . ."

## Headlee v. Franklin County Board of Elections, 367 F.Supp. 999, 1003 (D.C. Ohio 1973).

A residence requirement excludes both legitimate as well as frivolous candidates. It also fails to insure that only qualified candidates seek public office. We recognize that someone who has

resided in a community for several years has had more of an opportunity to become acquainted with the problems of the community. However, this fact does not necessarily make him more qualified to hold public office than another candidate who has resided in the community for less than a year. To insure effective government, the community wants candidates who have taken advantage of their opportunities to familiarize themselves with the problems and needs of the community regardless of their length of residence and who have the skills necessary to participate in local government. Whether or not a candidate has the necessary skill and knowledge of the community is a question ultimately for the voters to decide.

The defendant [The Board of Elections] has failed to demonstrate that the election process is inadequate to weed out incompetent, unknowledgeable candidates, insensitive to, and unaware of, the best needs of the community. The hallowed belief in the wisdom and power of the electorate must not be sold short and may not be circumscribed by artificial residence barriers fencing in the right to vote or the right to be a candidate for public office.

In closing, the Court would emphasize that it did not decide, or even suggest, whether the Legislature of the Virgin Islands is empowered to enlarge on the provisions of section 6(b) of the Revised Organic Act. Nor has this Court ventured any opinion as to the legality of durational residency requirements per se, or what the length of any such requirement should be, if permissible. The Court holds no more than that the subject three-year residence requirement constitutes an invalid legislative exercise, and that this Plaintiff before the Court may not be denied the privilege of running for the office to which he aspires on the basis of Title 2, V.I.C. § 103.