**PEOPLE OF THE VIRGIN ISLANDS, Plaintiff**

**v.**

**CURTIO MALIK FREDERICKS, Defendant**

Case No. ST-10-CR-F87

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

January 5, 2011

161

COURTNEY REESE, ESQ., Assistant Attorney General, U.S. Virgin Islands Department of Justice, St. Thomas, USVI, *For the Plaintiff.*

SAMUEL L. JOSEPH, ESQ., Territorial Public Defender, Office of the Territorial Public Defender, St. Thomas, USVI, *For the Defendant.*

CHRISTIAN, *Judge*

## MEMORANDUM OPINION

(January 5, 2011)

### I. Introduction.

Defendant Curtio M. Fredericks requests the suppression of a firearm, ammunition, and casings seized, and statements obtained, from him during the course of an early morning encounter with members of the Virgin Islands Police Department. He posits the warrantless stop, seizure, and search of his person violated his rights under the Fourth Amendment to the United States Constitution and should not be allowed into evidence at trial under the exclusionary rule. Conversely, the People of the Virgin Islands (the "People") contend that the Government's actions were justified under *Terry v. Ohio.*[1] There also is a specific provision of the Virgin Islands Code which is applicable to the circumstances raised in this case. Since the facts adduced at the motion hearing did not justify the initial stop under local law or the Fourth Amendment, the Court will grant Mr. Fredericks's motion.

---

[1] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

## II. Factual background.

On October 25, 2010, the Court held a hearing on Defendant's motion to suppress. Virgin Islands Police Department Special Operations Bureau ("SOB") Officers Francis Brooks and Angelo Liburd testified for the People. Mr. Fredericks did not present any witnesses. Based on the testimony, early in the morning of February 28, 2010, Officers Brooks and Liburd were on duty in a patrol vehicle when they received a radio report of shots fired in the Commandant Gade, or Garden Street, area of St. Thomas. The information was based on an anonymous tip, did not give a description of any possible suspect or number of persons involved, and did not indicate how many shots had been discharged. Officers Brooks and Liburd devised an investigation plan with other SOB officers, based on previously-used SOB procedures, to look into the report. Approximately 25 to 30 minutes after receiving the transmission, Officers Brooks and Liburd arrived at the western end of Nye Strade. At the same time, according to their plan, the other SOB officers converged at the eastern end of Nye Strade which intersects with Garden Street. According to both officers, this general area is known for criminal activity including reports of gunshots.

When they turned their car onto Nye Strade, Officers Brooks and Liburd observed several individuals standing in the middle of the street, including Mr. Fredericks. The officers stopped the car, exited the vehicle with their weapons drawn, and ordered all of the individuals to lie on the ground. Once the individuals lay on the ground, the officers holstered their weapons and conducted a pat-down search on each of the individuals. During the suppression hearing, both officers testified that they took these steps out of concern for their safety because: 1) they were outnumbered by the individuals in the street; 2) they were in a dangerous area; and 3) the men were on both sides of the vehicle. Importantly, however, both officers also testified that none of the individuals were doing anything illegal, and they did not have any reasonable suspicion that the individuals were involved in any criminal activity at the time. Nevertheless, both officers testified that none of the individuals were free to disregard their orders or avoid the pat-down searches.

When the time came for Defendant to be patted down, according to Officer Brooks, Mr. Fredericks voluntarily stated he had a gun in his possession. On cross-examination, however, Officer Liburd testified that

165

Defendant's statement was made in response to an inquiry from Officer Brooks. In either event, Officer Brooks asked Mr. Fredericks whether he had a license to carry a firearm, and Defendant admitted that he did not have such a license. Officer Brooks retrieved a twenty two caliber (.22) revolver from Defendant's left front pants pocket, handcuffed Defendant, and subsequently read him his *Miranda* rights. Officer Brooks further testified that closer inspection of the firearm revealed that two rounds in the weapon had been discharged. No testimony was offered about when the rounds in the revolver may have been fired. All of the remaining men were allowed to go free after being searched.

## III. Legal analysis.

### a. The initial stop was not justified under Virgin Islands law.

■ At the hearing on this motion, both parties focused their arguments solely on the Fourth Amendment and *Terry v. Ohio*. However, as noted in a recent opinion of this Court, in the Virgin Islands when investigating crimes involving firearms, the authority of law enforcement officers to conduct a limited search of a suspect is governed by V.I. CODE ANN. tit. 23, § 488.[2] It is a settled principle of jurisprudence that if a court can resolve a motion on statutory grounds, it should do so and avoid needless constitutional pronouncements.[3] Therefore, the Court first addresses the statutory issues present in this case.

23 V.I.C. § 488 provides,

> (a) Any law enforcement officer who, in the light of his observations, information and experience, has a reasonable belief that (i) a person may be wearing, carrying, or transporting a firearm in violation of section 454 of this title, (ii) by virtue of his possession of a firearm, such person is or may be presently dangerous to the officer or to others, (iii) it is impracticable, under the circumstances, to obtain a search warrant; and (iv) it is necessary for the officer's protection or the protection of

---

[2] *People v. Morton*, Case No. SX-09-CR-725, Mem. Op. at 14-15 (V.I. Super. Ct. Nov. 12, 2010) (Willocks, J.).

[3] *See Schweiker v. Hogan*, 457 U.S. 569, 585, 102 S. Ct. 2597, 73 L. Ed. 2d 227 (1982) (when both statutory and constitutional issues are presented to a court, the statutory issues should be addressed first to avoid unnecessary constitutional adjudications). *See also, Government v. Santiago*, 35 V.I. 130, 135, 937 F. Supp. 1157, 1160 (D.V.I. App. Div. 1996).

others to take swift measures to discover whether such person is, in fact, wearing, carrying, or transporting a firearm, such officer may:

(1) approach the person and identify himself as a law enforcement officer;

(2) request the person's name and address, and, if the person is in a vehicle, his license to operate the vehicle, and the vehicle's registration; and

(3) ask such questions and request such explanations as may be reasonably calculated to determine whether the person is, in fact, unlawfully wearing, carrying, or transporting a firearm in violation of section 454 of this title; and

(4) if the person does not give an explanation which dispels, the reasonable belief which he had, he may conduct a search of the person, limited to a patting or frisking of the person's clothing in search of a firearm. The police officer in acting under this section shall do so with due regard to all circumstances of the occasion, including but not limited to the age, appearance, physical condition, manner and sex of the person approached.

■■ The Court observes that the plain language of the initial paragraph of subsection (a) is written in the conjunctive, meaning that an officer who suspects that a person has a firearm without authorization and wishes to approach the individual as part of the inquiry must first have a reasonable belief as to all four of the items listed in the paragraph.[4] However, once an officer has established in his or her mind such a reasonable belief based upon the immediate circumstances, the official is empowered to take the four steps enumerated in the subsequent portions of subsection (a).[5]

---

[4] *Reese Bros., Inc. v. United States*, 447 F.3d 229, 235-236 (3rd Cir. 2006) ("The usual meaning of the word 'and,' however, is conjunctive, and 'unless the context dictates otherwise, the 'and' is presumed to be used in its ordinary sense. . . .' ") (citations omitted); *In re Philadelphia Newspapers, LLC*, 433 B.R. 164, 171 (Bankr. ED. Pa. 2010) ("Statutory phrases separated by the word 'and' are usually to be interpreted in the conjunctive.") (citations omitted).

[5] *See People v. Morton*, Case No. SX-09-CR-725, Mem. Op. at 14-15.

■ Officers Brooks and Liburd were investigating a report of fired gunshots. Their uniform testimony was that when they encountered Mr. Fredericks and the others on Nye Strade there was no indication that the persons were committing, or had recently engaged in, any crime at all. Rather, the officers saw the persons in the street, stopped their vehicle and immediately ordered all of the individuals to lie down on the ground. Both officers testified that they took this step because of safety concerns due to: 1) the individuals outnumbering them; 2) it was the early morning when it is dark; and 3) the area has a reputation for criminal activity. But, they also testified that all of the individuals complied with the orders of the officers without question. And, no testimony was adduced that prior to issuing the directive to lay down, any circumstance was present which reasonably caused the officers to believe that Mr. Fredericks, or any of the other individuals, possessed a firearm without legal authorization, or that Defendant or the others were of any immediate danger to the officers or anyone else. The Court thus concludes that the initial stop was not justified at its inception under Virgin Islands law.

■ ■ However, this violation of Virgin Islands law does not automatically require that the Court apply the exclusionary rule to prohibit the introduction of the weapon, ammunition, and statements at issue. The exclusionary rule should be applied to evidence obtained in violation of a statute only where the law explicitly requires exclusion or the statutory violation involved also has constitutional ramifications.[6] 23 V.I.C. § 488 does not contain any express provision that evidence obtained in the absence of its stated parameters must be excluded at trial. Contrarily, subsection (c) states "Nothing in this section shall be construed to limit the right of any police officer to make any other type of search, seizure, and arrest which may be permitted by law." This language undoubtedly indicates that a violation of Section 488, without more, should not automatically result in the exclusion of the evidence obtained. Therefore, the exclusionary rule will only be applied in this case if the pertinent evidence also was obtained in contravention of Mr. Fredericks's Fourth Amendment rights.

---

[6] *United States v. Abdi*, 463 F.3d 547, 556 (6th Cir. 2006); *United Stales v. Barry*, No. 2:08-cr-56-FtM-29SPC, 2009 U.S. Dist. LEXIS 19427, *5 (M.D. Fla. Mar. 9, 2009).

### b. The initial stop was not justified under the Fourth Amendment.

 ██ Under the Fourth Amendment, people have the right "to be secure in their persons . . . against unreasonable searches and seizures."[7] The Fourth Amendment's protections extend to the United States Virgin Islands pursuant to Section 3 of the Revised Organic Act of the Virgin Islands of 1954, as amended.[8] At the hearing, it was undisputed that, based on the facts presented, the stop at issue implicated the Fourth Amendment search and seizure concerns and analysis.

 In *Ybarra v. Illinois*, Justice Stewart explained that searches conducted without a warrant are "per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions."[9] Generally, "[t]he proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure."[10] However, when the search or seizure at issue was conducted without a warrant, the burden switches to the government to demonstrate the existence of a recognized exception to the warrant requirement.[11] There are competing precedents in the Virgin Islands regarding whether the People's burden of proof is by a preponderance of the evidence[12] or by clear and convincing evidence[13] — a more stringent milestone. The Court need not decide which is the more appropriate standard in this case because, based on the record, the People did not meet the lower threshold, and therefore necessarily fail to meet the higher standard as well.

---

[7] U.S. CONST. amend. IV; *See, Terry v. Ohio*, 392 U.S. 1, 9, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (adding that this "right of personal security belongs as much to the citizen on the streets" as to a citizen in her home).

[8] Revised Organic Act of the Virgin Islands 1954, as amended, § 3, 48 U.S.C. § 1561, re-printed in V.1. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 86 (1995) (preceding V.1. CODE ANN. tit. I) ("Revised Organic Act").

[9] 444 U.S. 85, 101, 100 S. Ct. 338, 62 L. Ed. 2d 238 (1979) (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967)).

[10] *United States v. Murray*, 53 V.I. 831, 842 (D.V.I. 2010) (quoting *Rakas v. Illinois*, 439 U.S. 128, 132, 99 S. Ct. 421, 58 L. Ed. 2d 387 (1978)).

[11] *United States v. Herrold*, 962 F.2d 1131, 1137 (3rd Cir. 1992).

[12] *United States v. Hodge*, No. Crim. 2004-0096, 2005 U.S. Dist. LEXIS 16843, *4 (D. V.1. July 6, 2005).

[13] *People v. Archibald*, 50 V.I. 74, 85 (V.1. Super. Ct. 2008).

■ Under one of the exceptions to the warrant requirement, "an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot."[14] When a defendant challenges the seizure of evidence under *Terry*, the trial court must judge the facts against the following objective standard: "would the facts available to the officer at the moment of the seizure or the search warrant a man of reasonable caution in the belief that the action taken was appropriate?"[15] No single fact or circumstance is the focus in this inquiry, but, instead the court looks at the totality of the circumstances.[16] In this case, there were insufficient facts known to Officers Brooks and Liburd to validate the stop of Mr. Fredericks.

■ The facts known to the police in this case were: 1) there was an anonymous report of shots fired on Garden Street; 2) they responded 25 to 30 minutes after the shots were fired; and 3) upon their response the officers encountered a group of men on a street which intersected with Garden Street who were, by the officers own testimony, not engaged in any criminal, or even suspicious, behavior. Conspicuously absent from the facts known to the officers was any description of any person or persons who fired the reported shots. To establish reasonable suspicion to support a warrantless stop, the government must not only demonstrate that there was criminal activity afoot, but also present evidence that the particular person in question was involved in some criminal activity.[17] No facts were produced which sustain any reasonable belief or suspicion that Mr. Fredericks was involved in any criminal activity. In fact, both officers testified that none of the individuals they stopped were engaged in any illegal activity or acting suspiciously.

However, the lack of a solid description of the potential offender is not the sole factor which is pertinent to this analysis. Other relevant factors include: 1) the reputation of the area in which the stop occurred for

---

[14] *United States v. Williams*, 413 F.3d 347, 351 (3rd Cir. 2005) (citing *Illinois v. Wardlow*, 528 U.S. 119, 123, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000)). *See also Terry v. Ohio*, 392 U.S. at 21.

[15] *Terry v. Ohio*, 392 U.S. at 21-22.

[16] *United States v. Nelson*, 284 F.3d 472, 474 (3rd Cir. 2002) (quoting *United States v. Arvizu*, 534 U.S. 266, 122 S. Ct. 744, 151 L. Ed. 2d 740 (2002)).

[17] *United States v. Goodrich*, 450 F.3d 552, 560 (3rd Cir. 2006).

criminal activity; (2) the time of day; (3) the geographical and temporal proximity of the stop to the scene of the alleged crime; and (4) the number of persons in the area.[18]

No facts were provided at the hearing which illustrate along what area of Garden Street the reported shots were fired. As Officer Brooks testified, Garden Street extends from Main Street north past the All Saints Church, where it veers northwest, and continues to where it reaches an intersection above Savan. Given this lengthy stretch of roadway and the lack of information regarding the area from which the reported shots were fired, it is not possible for the People to establish the geographic proximity between the stop of Mr. Fredericks and the crime being investigated. In terms of temporal proximity, both officers testified that they arrived at Nye Strade 25 to 30 minutes after they received the report of shots fired. Within that period of time, any number of persons may have traversed that area because both officers acknowledged that there were bars or clubs on Garden Street which were open at that time of night. Thus, any number of individuals could have traversed that general area on that late night and early morning within the half-hour time frame. Indeed, as both officers testified, as part of the plan the other SOB officers stopped, in the same fashion and at approximately the same time, a number of other persons at the other end of Nye Strade which actually intersects with Garden Street.

 ██ Both Officer Brooks and Officer Liburd testified that the Garden Street area has a reputation for drug activity and the discharge of firearms. In addition, they expressed concern that the encounter was in the wee hours of the morning when lighting conditions are more questionable. On their face these factors appear to support the position of the People. However, it is settled that mere presence in a high crime area cannot sustain reasonable suspicion for a stop under the Fourth Amendment.[19] In *Brown v. Texas*, law enforcement officers in El Paso, Texas, stopped the defendant, a person who in their view "looked suspicious" and was in an area reputed to have a high incidence of drug trafficking. The United States Supreme Court, in reversing a conviction based on a Texas law imposing criminal penalties for failure to identify oneself to a law enforcement officer, plainly stated,

---

[18] *Id.* at 561.

[19] *Brown v. Texas*, 443 U.S. 47, 99 S. Ct. 2637, 61 L. Ed. 2d 357 (1979).

"We have recognized that in some circumstances an officer may detain a suspect briefly for questioning although he does not have 'probable cause' to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. However, **we have required the officers to have a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.**"[20] (Emphasis added).

 In this case, neither officer even suggested that Mr. Fredericks looked suspicious, and both expressly stated that he was not engaged in any suspicious or criminal activity. The People also argued at the hearing that the stop and frisk was justified under *Terry* because Mr. Fredericks did not show that he was engaged in any "legitimate" activity on Nye Strade at that early hour. However, as discussed above, the burden of demonstrating cause for a warrantless stop and seizure rests on the People, not Defendant. Further, the Court reminds the People that citizens of the Virgin Islands have a fundamental right to traverse the public roads of the territory.[21] Just as in *Brown*, in this case "The flaw in the [People's] case is that none of the circumstances preceding the officers' detention of appellant justified a reasonable suspicion that [the defendant] was involved in criminal conduct."[22] Because the People failed to establish that there was a reasonable suspicion to stop and detain Mr. Fredericks, his Fourth Amendment rights were violated, and it is the responsibility of the Court to apply the exclusionary rule as requested by Defendant.

## IV. Conclusion.

While the Court understands and applauds the People's desire to decrease incidents of firearms violations and related crimes in the Virgin Islands, their efforts must comport with the constitutional restrictions placed on the Government through the Revised Organic Act and the Virgin Islands Code. Because the People were unable to present any evidence which supports a finding of reasonable suspicion that

---

[20] *Id.* at 51 (citations omitted).

[21] *See, Schneider v. Todman*, 13 V.I. 182, 187 (D.V.I. 1976) ("By the clear implication of the decided cases, the right to travel is not restricted to inter-state commerce but extends to intra-state (in our context intra-territorial) movements as well.") (citations omitted).

[22] 443 U.S. at 51-52.

Mr. Fredericks was engaged in criminal activity prior to the stop, his Fourth Amendment rights were violated, and his motion to suppress must be granted. The Court will enter an appropriate order with this opinion.